The Atchison, Topeka & Santa Fe Railway
Company v. Alice M. Parry.

No. 13,257. (73 Pac. 105.)

SYLLABUS BY THE COURT.

1. Railroads—*Duty to Passenger.* It is the duty of a carrier of
passengers to exercise reasonable and ordinary care in looking
after and protecting one who becomes sick or unconscious while a
passenger. Whether such care has been exercised is ordinarily a
question of fact for the jury.

2. ——— *Proximate Cause—Question for Jury.* Negligence,
to be the proximate cause of an injury, must be such that a per-
son of ordinary caution and prudence would have foreseen that
some injury would likely result therefrom, not that the specific
injury would result. The question whether negligence is the
proximate cause of an injury is ordinarily one of fact for the jury.

Error from Harvey district court; M. P. Simpson,
judge. Opinion filed July 10, 1903. Affirmed.

*A. A. Hurd,* and *C. S. Bowman,* for plaintiff in
error.

*John J. Hildreth,* for defendant in error.

The opinion of the court was delivered by

Cunningham, J.: Robert Parry was a passenger on
the Santa Fe railway going from Purcell, I. T., to
Denver, Colo. In making this journey he was re-
quired to change cars at Newton, Kan. As the train
approached Newton, and a mile or two south of it, the
conductor observed that Parry was ailing with some-
thing that looked to him like a fit. He noticed that
he "was straightened out and his limbs were stiff
and jerking. He was frothing at the mouth, and his
eyes looked glaring and starry, just like a man that
had a fit." When the train arrived at Newton,
Parry seemed to be recovering, but had not entirely

regained consciousness, and the conductor was unable to get any response when he tried to converse with him. The conductor called the depot-master, who, with the assistance of the porter, removed Parry from the train, the depot-master being informed by the conductor of the condition of the passenger, and requested to take care of him and see that he was put upon the right train to take him to his destination, which train was to leave in about four hours. After the passenger was removed from the train, he was left in the care of the depot-master, the porter going to his other duties. The depot-master tried to talk with him, but elicited nothing but groans, mutterings, and unintelligible replies. It seemed, however, that he desired to go his own way without any assistance, so that, after helping him on with his coat, he was allowed, after about five or ten minutes, to take his own course without further attention, the depot-master supposing that he had been drinking and desired to go where he could procure liquor. The next seen of him was about four hours after his removal from the train, at a point about five miles south of Newton, where, having laid down upon the railway-tracks, he was run over by a south-bound train and killed.

The negligence counted upon by the plaintiff, his widow, as a ground for recovery was that the company failed to exercise a proper degree of caution and care in looking after Parry after he was removed from the train in an unconscious and irresponsible condition of mind and body. The jury returned a general verdict in favor of the defendant in error, and also answered special questions submitted to them. Among them were the following:

"7th. What was his appearance and condition, mentally and physically, on his arrival in Newton?

Railway Co. v. Parry.

Ans. Recovering from a convulsion, apparently unconscious.

"8th. Did J. W. Anderson, the depot-master at Newton, of the defendant, take charge of the deceased upon his arrival at Newton?    A.  He did."

"10th.  Does said Anderson possess the common and ordinary capabilities, judgment and prudence of men and persons generally?    A.  We think so.

"11th.  About how long did said Anderson keep charge of said deceased?    A.  Five to ten minutes."

"15th.  (When) said Anderson ceased to care for the deceased, did Anderson believe that the deceased had sufficient strength and consciousness to take care of himself?    A.  He claimed so.

"16th.  At the time Anderson ceased to care for the deceased, did he think or contemplate that deceased would wander away and afterwards get into a place of danger and lose his life?    A.  No."

The railroad company demurred to the plaintiff's evidence, which was overruled.  It also moved for judgment in its favor upon the special findings:  This was overruled, and judgment entered for plaintiff on the general verdict.

The railway company insists that the judgment against it was erroneous, first, because there was no evidence showing any culpable negligence on the part of any of its agents or servants; second; if there was, that such negligence was not the proximate cause of the injury.  The principles to which we must look for a solution of these questions are neither novel nor intricate.  Parry was a passenger not only while on the train but after his arrival at Newton.  Through no fault of his, he was in such a condition of mind and body as to be unable to care for himself by reason of the sudden sickness which had overtaken him.  The duty of a carrier of passengers under such circumstances was announced in the syllabus in *A. T. & S.*

*F. Rld. Co. v. Weber*, 33 Kan. 543, 6 Pac. 877, 52 Am. Rep. 543, in the following language :

"Where an unattended passenger, after entering upon a journey, becomes sick and unconscious or insane, it is the duty of the railroad company to remove him from the train, and leave him until he is in a fit condition to resume his journey, or until he shall obtain the necessary assistance to take care of him to the end of his journey. The duty of a railroad company to such a passenger does not end with his removal from the train, but it is bound to the exercise of reasonable and ordinary care in temporarily providing for his protection and comfort."

The following language is found in the opinion :

"The duty of the railroad company, however, with respect to Weber, did not end with his removal from the train. He was unconscious, and unable to take care of himself. The company could not leave him upon the platform helpless, exposed, and without care or attention. It was its duty to exercise reasonable care and diligence to make temporary provision for his protection and comfort. As was said by the learned court who tried the cause : 'Of course the carrier is not required to keep hospitals or nurses for sick or insane passengers, but when a passenger is found by the carrier to be in such a helpless condition, it is the duty of the carrier to exercise the reasonable and necessary offices of humanity toward him until some suitable provision may be made.' " (Id. 554.)

Whether or not the depot-master discharged this duty to its required measure in this case was a question for the jury to determine. The jury did determine that he possessed the common and ordinary capabilities, judgment and prudence of men generally, and that at the time he ceased to look after Parry he thought that deceased had sufficient strength and consciousness to take care of himself, and did not con

template that he would wander away into a place of danger.   We think, however, that this hardly shows affirmatively that degree of care commensurate with the duty resting upon the company.   It is not thus made to appear that reasonable and ordinary care in providing for the safety of the deceased was exercised ; whereas by the general verdict it does appear that such care was not exercised.

It is further contended that, even though the depot-master was negligent in his manner of treatment of the deceased, such negligence was not the proximate cause of the death ; that no reasonably prudent man would have foreseen that Parry would have wandered away for a distance of five miles, and have laid down or fallen upon the track in such a place and position that he would be run over by the train and thus killed, and that the company therefore was not required to guard against so improbable a result.   Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that an injury would likely result therefrom ; not that the specific injury would result, but an injury of some character.

"'It is not necessary,' say the supreme court of Minnesota, following the supreme judical court of Massachusetts, 'that the injury, in the precise form in which it in fact resulted, should have been foreseen.   It is enough that it now appears to have been a natural and probable consequence.'   In other words, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the consequence of his negligence could have been foreseen by him ; it is sufficient that the injuries are the natural, though not the necessarv and inevitable, result of the negligent fault." Thomp. Neg. § 59.)

It here appears that the place where the depot-master permitted Parry to go by himself was near a street-crossing over which tracks were laid, along which trains passed. It was a place of danger to one not in the possession of his faculties ; a place where the depot-master might reasonably have apprehended that harm of some sort would come to Parry in his condition. So that, although he wandered for four hours and was run over five miles from this place, the act of the depot-master in permitting him to go was no less the proximate cause of his death than it would have been if it had occurred within a short distance and a few moments. At most, the question whether the negligence of the depot-master was the proximate cause is one upon which the minds of different parties might reasonably disagree ; and such being the case, and the whole matter having been submitted to the jury under proper instructions, and they having found that it was, we may not disregard these findings of fact. We are of the opinion that, upon both questions, there was sufficient evidence to go to the jury and to sustain the general finding in favor of the defendant in error.

The judgment will be affirmed.

All the Justices concurring.