WAGNER v. MINNIE HARVESTER CO.

No. 281.  Opinion Filed January 11, 1910.

(106 Pac. 969.)

1.    TERRITORIES—Legislative Power — Monopolies. Chapter 83 (sections 6739-6743) Wilson's Rev. & Ann. St. 1903, an enactment of the territorial Legislature, passed December 25, 1890, entitled, "An Act to Prevent Combinations in Restraint of Trade." is neither in conflict nor inconsistent with `the Constitution or laws of the United States, nor with an act on the same subject applicable to territories enforceable by the federal authorities, passed by Congress July 2, 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and was a valid statute of said territory. Following the case of **Territory v. Long Bell Lumber Co. et al.**, 22 Okla. 890, 99 Pac. 911.

        (a)  The fact that a prosecution for a violation of such territorial statute would also be a violation of the federal act does not necessarily render it invalid.

2.    MONOPOLIES—Action for Purchase Price of Goods—Defense. A contract of purchase of material, provisions, feed, articles of

merchandise, or any commodity, made in the territory of Oklahoma by any individual, partnership, or corporation transacting business in violation of sections 6739 and 6740. Wilson's Rev. & Ann St. 1903, such purchaser is not liable for the purchase price thereof, and may plead as a complete defense that such contract was made in violation of said acts.

3. COURTS—Foreign Contract Illegal Where Made—State Comity— Defenses. A contract of purchase of any article or commodity from any individual company, or corporation, made in the State of Missouri contrary to the provisions of sections 8965 and 8966, Rev. St. Mo. 1899 (Ann. St. 1906, pp. 4150, 4152), defining pools, trusts, monopolies, etc., is subject to be defeated when sought to be enforced in the courts of that state by virtue of the provisions of section 8970 of the Revised Statutes of Missouri of 1899 (Ann. St. 1906, p. 4153), wherein it provided that such purchasers shall not be liable for the price or payment thereof, but may plead the violation of said articles as a defense to any suit therefor.

(a) When an action is brought to recover the contract or purchase price for such articles or commodities in the courts of this state under the laws of comity between different states, the provisions of said section 8970, supra, not being contrary to the public policy of this state, such defense may be pleaded as a bar to recover here to the same effect as in the state of Missouri.

4. EVIDENCE—Presumptions—Law of Sister State or Territory. When the question arises as to what laws are in force in another state or territory, and the same are neither pleaded nor proved, it will be presumed that such laws are the same as those of the forum.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by the Minnie Harvester Company against C. L. Wagner. A demurrer to the answer was sustained, and defendant brings error. Reversed and remanded.

On the 8th day of February, 1905, the defendant in error, as plaintiff, commenced this action against the plaintiff in error as defendant, in the district court of Kingfisher county, territory of Oklahoma, declaring on a certain promissory note, as follows:

"Kingfisher, O. T., 1903. On or before the first of Dec., 1904, for value received I promise to pay to the Minnie Harvester Company, or order, the sum of three hundred eighty-five

dollars, with interest from Oct. 1, 1904, at 6 per cent. per annum, payable at office of Minnie Harvester Company, St. Paul. C. L. Wagner."

The defendant answered as follows:

1. General denial.

2. That in the spring of 1903 he ordered a car load of Minnie Harvesters from the plaintiff, which were to be delivered on board the cars at Kansas City, Mo., said order being given to the plaintiff by defendant in ample time for the harvest of 1903. That instead of delivering same on board the cars at Kansas City, Mo., they were shipped from St. Paul, Minn., the car being delayed two or three weeks on the route, being caught at Omaha, Neb., in what is known as the Kansas City flood. That when said car arrived at Kingfisher, the harvest of 1903 was in progress. That defendant had orders from the farmers for all the harvesters ordered from the plaintiff, but the delay caused by the delay of plaintiff caused him to lose the sale of four harvesters and one mowing machine of the value of $400. That when defendant received said car, he supposed that the machines had been loaded at Kansas City, as per contract, and that the delay was occasioned by the flood for which the plaintiff was not responsible, but that after receiving said car he discovered that the delay was caused by the fault and negligence of plaintiff. That defendant repeatedly wired the company relative to said binders, which replied that the waters were so high in Kansas City that they could not even read the numbers of the car, and defendant, believing the representations of plaintiff to the effect that the delay was caused by agencies without its control, received all of said machines, but that had he known the facts which were concealed and withheld from him without any fault or negligence on his part he would not have received said car. That, in receiving same, it was the result of the deceit and fault of plaintiff, and by and through said false statements and representations. That on account of said fraud defendant refused to pay for the binders remaining unsold to the farmers. That on or about the 23d day of September, 1903, such binders

were destroyed by fire, being of the value of $400. That on or about the date of the execution of said note, the plaintiff made the following false and fraudulent representations to defendant, to wit, that the said Minnie Harvester Company had the machines which they sold insured, and that the machines destroyed by the fire on September 23d were insured, and that if this defendant would make settlement for these machines and sign the said note set out in plaintiff's petition he would be reimbursed the amount of the insurance on said machines, which said amount would be almost the face of the note. That said representations were false and fraudulent and untrue, and were made by the plaintiff for the purpose of inducing this defendant to sign said note, and defendant was thereby induced to sign said note by reason of said false and fraudulent representations, and that otherwise he would not have signed same. That on the day said note was signed, and prior thereto, the plaintiff represented and stated to the defendant that the Minnie Harvester Company was an independent concern manufacturing and selling harvesters, binders, mowing machines, and other farming implements on its own account, and that it was in no way connected with the International Harvester Company, and that it controlled its own output, and that it was not in any way connected with any trust, pool, or combination with the International Harvester Company or other corporations for the purpose of regulating and fixing the prices of binders, mowing machines, and other farming implements, or to restrict competition and control prices of binders, mowing machines, and other farming implements, and that it had no agreement or understanding with the said International Harvester Company and other corporations for such purposes, and that it intended to remain in business and compete with said pooled corporations, and that upon the execution and delivery of said note this answering defendant should handle and sell the binders and mowing machines of said plaintiff for the year 1904 in and for the vicinity of Kingfisher. That during the year 1903 the defendant had handled the machinery of said plaintiff,

to wit, its binders and mowing machines, in and around King-fisher, and in pushing the sale of said machinery, and in establishing a trade for said machinery, expended large amounts of money and labor, and this defendant, wishing to realize on the money, labor, and effort heretofore expended in establishing a trade for said binders and mowing machines, desired to continue to sell said binders and mowing machines during the year 1904, which fact was well known to the plaintiff, the said plaintiff well knowing the wishes of this defendant to continue the sale of the Minnie Harvester Company's machinery for the year 1904, and subsequent years, made the representations hereinbefore set forth to this defendant that they were an independent concern and not in any pool or combination, and that they controlled their own output, and that they intended to continue in business, and that they intended to put their machinery on the market for the year 1904, and subsequent years, and that they intended to continue manufacturing the twine, known as the "Grass Twine," fitted for their machinery. That the representations and statements aforesaid made by said plaintiff to the defendant were false, fraudulent, and untrue, and that they were believed by defendant, and that defendant acted on such belief and signed said note. Whereas, in truth and in fact, the said Minnie Harvester Company on the very date said note was signed and for months prior thereto had abandoned all independent effort to sell its machinery and had entered into a trust, pool, and combination with the International Harvester Company, and were absolutely controlled by the pooled corporation, and that it had already agreed to take its harvesters, mowing machines, and binding twine off of the market and to discontinue the manufacture of the same, and that this fact was well known to the plaintiff and unknown to the defendant. That by reason of said deceit and fraud practiced upon him he was induced to sign said note and did sign the same. That such fraud was not discovered by defendant until January or February, 1904, when the plaintiff refused to sell defendant any further machinery and twine on the grounds that

they had gone out of business as an independent concern, and was absorbed by the pool.

3. That at the time said note was executed and delivered, and before the machinery for which it was executed as a part of the purchase price was contracted for, the plaintiff and the International Harvester Company and other persons, firms, and corporations did create and enter into and become members of and parties to a pool, trust, agreement, combination, and understanding to regulate and fix the prices at which binders, mowing machines, and other farming implements should be sold, and to prevent and restrict competition in the sale of binders, mowing machines, and other farming implements, and at the time said defendant executed said note the plaintiff was a member of and party to said pool, trust, agreement, combination and understanding, and operating and transacting business under the same in the territory of Oklahoma contrary to the law of said territory and contrary to chapter 83 (sections 6139-6143 of the Statutes of Oklahoma of 1893, and contrary to the common law of Oklahoma applicable to such pools and combinations in restraint of trade.

4. Substantially the same as paragraph 3 except it is alleged to be a Missouri contract, and the anti-trust laws of that state are pleaded.

5. An alleged counterclaim.

*P. S. Nagle,* for plaintiff in error.

*E. G. Spilman,* for defendant in error. Citing: Noyes' Intercorporate Relations (2d Ed.) sec. 426; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540; 14 A. & E. Enc. L. 33; *Lumley ι. Wabash Ry. Co.,* 71 Fed. 21; Joyce's Defenses to Commercial Paper, sec. 320.

WILLIAMS, J. (after stating the facts as above.) On August 17, 1908, the counsel for the plaintiff in error filed a brief in this case *in haec verba:*

## "STATEMENT OF FACTS.

"The plaintiff below, the Minnie Harvester Company, brought suit against the defendant below on a promissory note for $385. The defendant below, C. L. Wagner, demurred to the petition of plaintiff, which demurrer was overruled. The defendant below then answered, and the Minnie Harvester Company demurred to his answer, which demurrer was by the court sustained. The defendant, Wagner, then filed an amended answer, which was again demurred to by plaintiff below, and the demurrer sustained by the court, to which ruling of the court the defendant below excepted and brings the case to this court.

## "BRIEF AND ARGUMENT.

"The only question involved in this case is the sufficiency of the amended answer of the defendant below. We feel that the court erred in sustaining the demurrer to the answer and also in sustaining the demurrer to the amended answer. We contend that the note under the pleadings is defeated by the deceit and fraud of the Minnie Harvester Company, and that this deceit and fraud is well pleaded. We contend that the second, third and fourth defenses are well pleaded, and state severally a complete defense to plaintiff's cause of action, and that the court erred in sustaining the demurrer thereto, and we further contend that the cross-petition states a cause of action against the plaintiff below and is well pleaded, and that the court was in error in sustaining the demurrer thereto. It would be difficult to write a brief on the multiplication table. If it is not evident upon the fact of the answer that it constitutes a defense, nothing that we can say in a brief can strengthen our position. We simply ask the court to read the amended answer, and we feel sure that upon an examination of the answer it will be found that the court erred in sustaining the demurrer thereto."

The defendant in error has not moved to strike said brief on the ground of its insufficiency or not complying with the rules of this court, and for that reason we do not strike the same.

We will consider first the defenses set out in paragraphs 3 and 4. In the former it is averred that before the machinery for which the note was executed and delivered was contracted for the plaintiff and the International Harvester Com-

pany and other firms and corporations and individuals entered into and became members of and parties to a pool, trust, agreement, combination, and understanding to regulate and fix the prices at which binders, mowing machines, and other farming implements and material should be sold, and to prevent and restrict competition in the sale of binders, mowing machines and other farming implements; that at the time defendant executed said note the plaintiff was a member of such pool, trust, agreement, combination, and understanding, operating and transacting business under the same in the territory of Oklahoma contrary to the law of said territory, and contrary to Chapter 83 (sections 6139-6143) of the Statutes of Oklahoma of 1893, and contrary to the common law of Oklahoma applicable to such pools and combinations in restraint of trade.

The latter contains substantially the same averments, with the exception that the contract is alleged to have been consummated in the state of Missouri, and that the anti-trust laws of that state, the same being pleaded, control. This case was determined in the *nisi prius* court prior to the organization of the state government, where it was apparently successfully contended that chapter 83 (sections 6739-6743) Wilson's Rev. and Ann. St. Okla. 1903, relating to trusts and combinations in restraint of trade was invalid on the ground that the Congress of the United States having legislated on this subject by act of July 2, 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) entitled, "An Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies," it operated to exclude such authority on the part of the territorial Legislature. The contrary was held by this court in the case of *Territory v. Long Bell Lumber Co.*, (22 Okla. 890) 99 Pac. 911. Section 6741 (chapter 83 § 3) Wilson's Rev. & Ann. St. 1903 provides:

"Any person purchasing provisions, feed, material, articles of merchandise, or any commodity from any individual, firm, partnership or corporation, transacting business in violataion of the provisions of this act, such person so purchasing shall not be liable

for the price or payment of any such article or commodity and may plead this act, as a defense in any suit for price or payment."

The plaintiff in error (defendant below) seems by the averments of paragraph 3 to have brought his defense clearly within the provisions of said section. But it is insisted by the defendant in error that when the entire answer is considered together that it appears that said contract was executed either in Kansas City, Mo., or St. Paul, Minn., and therefore it is not controlled by the laws of Oklahoma Territory. The pleadings on the part of the plaintiff in error are not as specific as they might have been. It is immaterial, however, under the present status of the record whether it be a Missouri or Minnesota contract. Sections 8965 and 8966 (chapter 143, art. 1, vol. 2, pp. 2082, 2083), Rev. St. Mo. 1899 (Ann. St. 1906, pp. 4150, 4152), defining pools, trusts, etc., as pleaded by plaintiff in error, are at least as comprehensive as sections 6739 and 6740 of Wilson's Rev. & Ann. St. 1903. Section 8970, Rev. St. Mo. 1899 (Ann. St. 1906, p. 4153), provides:

"Any purchaser of any article or commodity from any individual company or corporation transacting business contrary to the provisions of the preceding sections of this article (such reference including sections 8965 and 8966), *supra,* shall not be liable for the price or payment of such article or commodity and may plead this article as a defense to any suit for such price or payment."

But it is further contended that the contract under which these machines were ordered and shipped as attached to the answer contains a provision to the effect that it shall not become effective until ratified by the general manager of the home office St. Paul, Minn. By reference to said contract, you will find the following clause therein:

"This agreement not valid until countersigned by the General Manager Countersigned March 10th, 1903. Frank J. Ottis, General Manager."

The following clause, however, is further contained in said contract:

"Delivered free on board K. C., Mo., to be shipped on or

before April 1st or sooner, 1903. The purchaser agrees to pay for said machines in cash, or execute an acceptance, on receipt of invoice, payable: December 1st, 1903, with interest at six per cent. per annum from October 1st, 1903. Payable at St. Paul, Minnesota, in exchange on St. Paul, New York, Chicago, St. Louis, Kansas City or Indianapolis."

It is further averred in the fourth paragraph or defense that the defendant in error was acting as the agent of the American Grass Twine Company, a Delaware corporation doing business at St. Paul, Minn., that the orders for the purchase of goods were forwarded to the plaintiff at Kansas City, Mo., its acceptance being returned to the plaintiff in, the regular course of mail, the plaintiff's letters being mailed at Kansas City, Mo.; that all the business with the plaintiff in selling said machines, etc., was done at Kansas City, Mo., by the general agent or manager of the plaintiff. In the third paragraph or defense the substantial averment is that this contract was made in Oklahoma, and that under the laws of Oklahoma such resulted in the violation of the anti-trust laws and that no recovery could be had thereon. In the fourth paragraph or defense the averment is that the contract was made, entered into, and consummated in the state of Missouri, and that under the anti-trust laws in force in that state the party to such contract being a violator of such law is not entitled to recover. But defendant in error says that notwithstanding these averments the contract was consummated in St. Paul, Minn., and is therefore governed by the laws of that state if any state law applies.

If this was a Missouri contract, the laws of that state and not of Oklahoma Territory, both as to contract and substantial defenses provided by statute affecting the contract or obligation, apply. *State v. Lancashire Ins. Co.,* 66 Ark. 466, 51 S. W. 633, 45 L. R. A. 348; *People v. Butler Street Foundry & Iron Co.,* 201 Ill. 236, 66 N. E. 349; *In re Grice* (C. C.) 79 Fed. 627; Wharton on the Conflict of Laws, (3d Ed.) vol. 2, § 428a. Likewise, if it was a Minnesota contract, neither the laws of Missouri nor Oklahoma Territory affecting such contract govern, but those of

that state. In that event, as the laws of Minnesota have neither been pleaded nor proved, they are presumed to be the same as were in force in the territory of Oklahoma. *Harn v. Cole,* 20 Okla. 553, 95 Pac. 415; *Shlotterbeck v. Schwinn el al.,* 23 Okla. 681, 103 Pac. 854; *Mansur-Tebbetts Implement Co. v. Willett,* 10 Okla. 383, 61 Pac. 1066; *Betz v. Wilson,* 17 Okla. 383, 87 Pac. 844. However, as to remedy and procedure, the *lex fori* prevails.

Under the allegations of the pleadings, we do not infer that the plaintiff in error contends that the anti-trust act passed by the Congress of the United States on July 2, 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), applies. It is insisted, however, by the defendant in error that the answer of the plaintiff in error does not state a defense under said act, and that it exclusively controls.

In the case of *Connolly. v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the court said:

"This is not an action to enforce or which involves the enforcement of the alleged arrangement or combination between the plaintiff corporation and other corporations, firms, and companies in relation to the sale of Akron pipe. As already suggested, the plaintiff, even if part of a combination illegal at common law, was not for that reason forbidden to sell property it acquired or held for sale. The purchases by the defendants had no necessary or direct connection with the alleged illegal combination; for the contracts between the defendants and the plaintiff could have been proved without any reference to the arrangement whereby the latter became an illegal combination. If, according to the principles of the common law, the Union Sewer Pipe Company could not have sold or passed title to any pipe it received and held for sale, because of an illegal arrangement previously made with other corporations, firms, or companies, a different question would be presented. But we are aware of no decision to the effect that a sale similar to that made by the present plaintiff to the defendants respectively would in itself be illegal or void under the principles of the common law. The contracts between the plaintiff and the respective defendants were, in every sense, collateral to the alleged agreement between the plaintiff and other corporations, firms, or

associations whereby an illegal combination was formed for the sale of sewer pipe."

The court further said:

"If the Act of Congress expressly authorized one who purchased property from a combination organized in violation of its provisions to plead, in defense of a suit for the price, the illegal character of the combination, that would present an entirely different question. But the act contains no such provision."

In the case of *Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486, the court distinguishing that case from *Connolly v. Union Sewer Pipe Co.*, *supra*, quoted therefrom the foregoing excerpt without any modification. The court further said:

"In that case the defendant, who sought to avoid payment for the goods purchased by him under contract, had no connection with the general business or operations of the alleged illegal corporation that sold the goods. He had nothing whatever to do with the formation of that corporation, and could not participate in the profits of its business. His contract was to take certain goods at an agreed price, nothing more, and was not in itself illegal, *nor part of nor in execution of any general plan or scheme that the law condemned.* The contract of purchase was wholly collateral to and independent of the agreement under which the combination had been previously formed by others in Ohio. It was the case simply of a corporation that dealt with an entire stranger to its management and operations and sold goods that it owned to one who wished to buy them. In short, the defense in the Connolly Case was that the plaintiff corporation, although owning the pipe in question and having authority to sell and pass title to the property, was precluded by reason *alone* of its illegal character from having a judgment against the purchaser. We held that that defense could not be sustained, either upon the principles of the common law or under the anti-trust act of Congress. The case now before us is an entirely different one. The Continental Wall Paper Company seeks, in legal effect, the aid of the court to enforce a contract for the sale and purchase of goods which, *it is admitted by the demurrer, was in fact and was intended by the parties to be based upon agreements that were and are essential parts of an illegal scheme.* We state the matter in this way because the plaintiff, by its demurrer, admits, for the purposes of this case, the truth of all the facts alleged in the third defense.

It is admitted by the demurrer to that defense that the account sued on has been made up *in execution of the agreements* that constituted or out of which came the illegal combination, formed for the purpose and with effect of both restraining and monopolizing trade and commerce among the several states. The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and *pursuant to which* the accounts sued on were made out, and which had for their object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. If judgment be given for the plaintiff, the result, beyond all question, will be to give the aid of the court in making effective the illegal agreements that constituted the forbidden combination. These considerations make it evident that the present case is different from the Connolly Case. In that case the court regarded the record as presenting the question whether a voluntary purchaser of goods at stipulated prices, under a collateral, independent contract, can escape an obligation to pay for them upon the ground *merely* that the seller, which owned the goods, was an illegal combination or trust. We held that he could not, and nothing more touching that question was decided or intended to be decided in the Connolly Case. The question here is whether the plaintiff company can have judgment upon an account which, it is admitted by demurrer, was made up, with the knowledge of both seller and buyer, with direct reference to and in execution of certain agreements under which an illegal combination, represented by the seller, was organized. Stated shortly, the present case is this: The plaintiff comes into court admitting that it is an illegal combination whose operations restrain and monopolize commerce and trade among the states, and asks a judgment that will give effect, as far as it goes, to agreements that constituted that combination, and by means of which the combination proposes to accomplish forbidden ends. We hold that such a judgment cannot be granted without departing from the statutory rule, long established in the jurisprudence of both this country and England, that a court will not lend its aid, in any way, to a party seeking to realize the fruits of an agreement that appears to be tainted with illegality, although the result of applying that rule may sometimes be to shield one who has got something for which, as between man and man, he ought, perhaps, to pay, but for which he is unwilling to pay."

The case of *Citizens' National Bank of Chickasha v. Mitchell et al.,* 24 Okla. 488, 103 Pac. 720, is in harmony with the Connolly and Continental Wall Paper Cases. The defenses pleaded by the plaintiff in error do not come within the rule of the Continental Wall Paper Case, and under the Connolly Case do not constitute a defense. Not only under the anti-trust laws of the territory of Oklahoma, but also of the states of Missouri and Minnesota, under the status of this record, the defendant in error was not entitled to recover. But did the fact that Congress having passed an anti-trust act covering combinations in forms of trusts and otherwise, or conspiracies in restraint of trade or commerce, or otherwise in any territory of the United States or the District of Columbia, or in restraint of trade or commerce between any such territory and another, or between any such territory or territories in any state, or states, or the District of Columbia and any state, or states, or foreign nations, exclude the anti-trust laws of such states from operating thereon?

In the case of *Territory v. Long Bell Lumber Co., supra,* it was held by this court that such act did not operate to exclude the territorial anti-trust act from operating on such infraction, and, by the same process of reasoning, the same result would be reached as to the anti-trust laws of Missouri and Minnesota. However, in the Connolly Case, *supra,* the defenses pleaded were as follows:

"First. That the plaintiff is, and at all times since about the first day of January, 1898, has been, a trust or combination of the capital, skill, and acts of divers persons and corporations carrying on a commercial business in the states of Ohio and Illinois and between said states and elsewhere in the United States of America, and organized for the expressed purpose of unlawfully and contrary to the common law creating and carrying out restrictions in trade, to wit, in the trade of buying, selling, and otherwise dealing in certain articles of merchandise, to wit, sewer and drainage pipes, and also for the express purpose of unlawfully and contrary to the common law limiting the production of said articles of merchandise and increasing the market price thereof; and also for the express purpose of unlawfully and contrary to the common law preventing compe-

tition in the manufacture, making, transportation, sale, or purchase of said articles of commerce; also for the express purpose of unlawfully and contrary to the common law fixing standards or figures whereby the prices of said articles of merchandise intended for sale, use, and consumption in this state should be controlled and established; and also for the express purpose of unlawfully and contrary to the common law being a pretended agency whereby the sale of said articles of commerce should and might be covered up and made to appear to be for the original vendors thereof, and so as to enable the original vendors or manufacturers thereof to control the wholesale and retail price of such articles of commerce after the title thereto had passed from such vendors or manufacturers; and for the further express purpose of unlawfully and contrary to the common law making and entering into and carrying out a certain contract or certain contracts by which the several persons or corporations forming the plaintiff or being the pretended stockholders thereof, to wit, have bound themselves not to sell, dispose of, or transport said articles of commerce below certain common standard figures or card or list prices in excess of the true market values thereof, and by which they have agreed to keep the prices of said articles of commerce at certain fixed or graduated figures, and by which they have established certain settled prices of said articles of commerce between themselves and others, so as to preclude a free and unrestricted competition among themselves and others in the sale and transportation of said articles of commerce, and by which they have agreed to pool, combine, and unite any interests they may have in connection with the sale and transportation of said articles of commerce so that the prices thereof may effect advantageously to themselves; that all of the claims of the plaintiff against the defendant in this action arise wholly out of, and are in respect of, sales of said articles of merchandise made between the first day of January, A. D. 1893, and the first day of March, 1896, to this defendant by the plaintiff in the ordinary course of its business as such a trust or combination acting as aforesaid, and that this action is brought to recover the alleged price thereof and for no other purpose.

"Secondly. That the plaintiff is, and at all times since the 1st day of January, 1893, was, a combination in the form of a trust in restraint of trade and commerce among the several states, and doing business as such throughout the United States and between the states of Ohio and Illinois, contrary to the provisions of an act of Congress of date of July 2, 1890, and entitled 'An Act to

Protect Trade and Commerce against Unlawful Restraint and Monopolies,' and that this action is brought solely to recover the price of articles of merchandise, to wit, sewer and drainage pipes, sold to the defendant by the plaintiff, then and there acting and doing business as such a combination, as aforesaid, in violation of the provisions of said act.

"Thirdly. That the plaintiff is, and at all times since the 1st of January, 1893, was, a trust doing business as such in the state of Illinois and elsewhere, contrary to the provisions of an act of the Legislature of the state of Illinois entitled 'An Act to Define Trusts and Conspiracies against Trade, Declaring Contracts in Violation of this Provision Void, and Making Certain Acts and Violations Thereof Misdemeanors, and Prescribing Punishment Thereof and Matters Connected Therewith, Approved June 20th, 1893, in force July 1st, 1893;' that this action is brought solely to recover the price of articles of merchandise, to wit, sewer and drainage pipes, sold to the defendant by the plaintiff, then and there acting and doing business in violation of the provisions of said act, and that the defendant hereby pleads said act in defense to this action and the whole thereof."

The Supreme Court of the United States in the Connolly Case having held that the first plea did not constitute a defense under the common law, and also that the second plea constituted no defense under the Sherman Act of July 2, 1890, then said:

"We come now to the consideration of the defense based upon the trust statute of Illinois of 1893. As that statute is alleged to be repugnant to the Constitution of the United States, and that its full scope may be seen, it is here given in full." (Then follows the act in *seriatim*.)

The court concludes that the same was in conflict with the provisions of the fourteenth amendment to the federal Constitution in respect to equal protection of the laws. It was necessarily assumed in that case that the federal anti-trust act did not have the effect of the exclusion of the state laws on that question. But in the case at bar, the state laws are cumulative, not being in conflict, merely providing such illegal combination may be pleaded as a defense in an action for recovery of the purchase price. Paragraphs 3 and 4, though indefinitely pleaded, are sufficient against a general demurrer.

.The plaintiff in error has failed in his brief to specifically point out wherein paragraphs 2 and 5 stated a valid defense or counterclaim. If it is so evident to counsel, as he states in his brief, that a valid .defense or counterclaim is pleaded, he should have no trouble in directing the attention of the court thereto and supporting the same with authorities. From such a condition on his part should arise a labor of delight and an industry of delectation. Under the circumstances, we decline to pass on the question as to whether or not the demurrer was .improperly sustained to such paragraphs. However, on account of the great public importance involved in the questions raised by the pleas in paragraphs 3 and 4, we have with diligence searched the authorities and given them such consideration as .the pressing duties of this court would permit, and determined same.

The judgment of the lower court is reversed and remanded.

Dunn, Hayes, and Turner, JJ., concur; Kane, C. J., having been of counsel in the lower court and being disqualified, does not participate in this decision.