## WESTERN UNION TELEGRAPH CO. v. CRAWFORD.

No. 973.   Opinion Filed June 27, 1911.

(116 Pac. 925.)

1.   **TELEGRAPHS AND TELEPHONES**—Failure to Deliver Message —Damages.   Plaintiff's husband, for her use and benefit, January 25, 1908, delivered to the agent of the plaintiff in error at Greenwood, Ark., a telegram directed to his brother at Haileyville, Okla., reading, ''Josie will be there to-night.''   This message was sent pursuant to an arrangement previously entered into between them that the addressee would on notice meet the said Josie, who was the wife of the sender.   The agent was informed of this arrangement and that plaintiff was about to be confined, and that he was sending her to his brother's house for that purpose; that it was a message of great importance, and should be rushed through; that Haileyville was a strange town to her, and that his wife would arrive between 11 and 12 o'clock that night, and that no hacks met the trains at that hour; and that she would have with her a heavy suit case and a two year old child. The train was belated, and plaintiff arrived between 2 and 3 o'clock in the morning. The telegram was not delivered, and plaintiff, finding herself alone, accepted the assistance of an acquaintance for a part of the way in endeavoring to find her intended stopping place, and while walking, carrying the suit case, and taking care of her child, she was ruptured internally in such a way as to cause labor pains, which continued for eight days, resulting in a dry birth with intense agony and suffering, and resulting in local impairment. Held, that the damages suffered were within the **Hadley v. Baxendale** rule, and were proximately caused by the neglect of the company to deliver the message, and that a recovery of $2,000 was not excessive.

2.   **STATUTES**—Foreign Statutes—Pleading and Proof.   Where reliance is had to support either a claim or a defense upon the laws of some other state, the same must be pleaded and proved in order to be rendered available, and, where this is not done, the presumption obtains that they are the same as the laws of this state.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; Preslie B. Cole, Judge.*

Action by Josie Crawford against the Western Union Telegraph Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*George H. Fearons, Shartel, Keaton & Wells,* and *F. H. Kellogg,* for plaintiff in error.

*Guy L. Anderson* and *Rowe & Rowe,* for defendant in error.

DUNN, J. This case presents error from the district court of Pittsburg county. The action was begun by the defendant in error, as plaintiff, filing her petition therein on September 25, 1908, the purpose of which was to recover damages from the plaintiff in error, which are alleged to have grown out of its negligence in failing to deliver a certain telegram. From the averments of the petition it appears that on the 25th day of January, 1908, between the hours of 1 and 2 o'clock p. m. of the said day, the plaintiff's husband, for her use and benefit, delivered to the operator of the defendant for transmission the following telegram: "To W. E. Crawford, Haileyville, Oklahoma. Josie will be there to-night. T. H. Crawford"; that W. E. Crawford was the brother. of the sender and Josie was his wife; that she was pregnant, and would be confined within about 10 days from the said date, and it was the purpose of the parties that she should be confined at the home of W. E. Crawford. At the time of the delivery of the said message to the agent, these facts were explained to the operator, and also that it was notice to the party to whom it was addressed to the end that he might meet the wife at the Rock Island depot, for the purpose of assisting her to his home in the said town, and that she would arrive there in the nighttime, and it was urgently necessary that the immediate delivery of said message should be made; that previous to the sending of the message full arrangements had been made with addressee to meet plaintiff on notice; that the message was received at the delivering office of the defendant at 8:45 p. m., and the train on which the wife had taken passage was scheduled to arrive at Haileyville on the night of the same day at about 11 o'clock p. m.; that the delivery of the said message was not made until the morning of January 28, 1908; that as a result of the negligence of the defendant in failing to deliver the message the said Josie Crawford was alone in a strange place with no one to assist her; that she was forced to carry a heavy suit case, and, with a child of about two years of age, to travel in the darkness of the night, through dense timber in search of the house of the said W. E. Crawford; that she became exhausted and was forced to seek

shelter in the home of a strange woman for the remainder of the night and that from that time on, for the space of eight days and until she gave birth to a child, she suffered the most intense and excruciating physical pain and mental agony.

To this petition the defendant answered denying that it received for transmission a message in the words and figures set out, and alleged that if it sent any it was written upon the printed form used by said defendant in its business, a copy of which was attached to its answer, and that under its terms a written contract was entered into between the sender of the message and the defendant, and that plaintiff did not perform the terms or conditions therein; that she did not present in writing any claim for damages within 60 days after the date of the acceptance of the message by the defendant for transmission.

To this answer a general denial was filed, and on the case coming on for trial before a jury a verdict was rendered for plaintiff in the sum of $2,000. A motion for a new trial being filed and denied, the case has been regularly lodged in this court for review.

Counsel for defendant, plaintiff in error here, argue four separate propositions: First, that the damages claimed are not proximate; second, that the court erred in the admission and exclusion of evidence; third, error relating to instructions; and, fourth, prejudicial statements made by the court. These will be discussed in the order here stated.

The question first presented by counsel here, that the damages claimed are not proximate, necessarily requires a review of the evidence in the case. It may be first stated that practically all of the evidence of material force and necessary for consideration is undisputed. The only dispute that is of any consequence is on the question of whether the message dictated by the husband of the plaintiff to the agent was written on a plain piece of paper or on one of the blanks furnished by the defendant. On this question, its agent testified that he had no recollection whatsoever of ever having seen the sender or of ever having sent the message, but that he never sent any message which he wrote ex-

cept that it was written upon one of the company's blanks, and that if he took this message for transmission as stated by the sender, he did so upon one of these blanks. For the purpose of this case his version of the matter will be taken as true, and it will be presumed it was written upon one of the company's blanks. The evidence necessary to be considered in order to determine the question of whether the damages were proximate and such as plaintiff was entitled to recover, is undisputed and is substantially as follows:

T. H. Crawford, plaintiff's husband, testified that he lived at Greenwood, Ark., and that W. E. Crawford was his brother; that previous to January 25, 1908, he had made arrangements with the said brother on notice to meet his wife at Haileyville, Okla.; that she was pregnant, and that he desired to have her sent to his brother's house to be cared for during confinement; that he did not know the exact distance from the depot to his brother's house, but that it was quite a way out; that he prepaid the message, and explained to the operator at the time its purpose and object, telling him that he was sending his wife to Haileyville to his brother's to be confined; and that it was a message of great importance, and he wanted him to rush it through; that his wife would arrive that night in Haileyville sometime between 11 and 12 o'clock, and that he had made arrangements with his brother to meet her at the depot; that no hacks met the trains at that hour of the night; that she would have a heavy suit case to carry, and a two year old child to take care of; that she was going to practically a strange town, and that it was necessary for the message to be delivered.

W. E. Crawford testified that he had lived at Haileyville since 1901; that he was well known to the people, to the railroad men and agents; that there was a telephone system in Haileyville, and that he was connected with it; that he received the telegram through the post office on January 28th, being sent to him through the mail; that arrangements had been made with him to meet his brother's wife on notice at the depot; *that he intended to meet her in a carriage and take her to his home, and that the rea-*

*son he did not was because he did not receive the telegram;* that the train on the night of the 25th was late, arriving about 3 o'clock a. m. of the 26th; that she arrived at his home on Sunday evening about dark, was suffering and continued to suffer for about eight days, when she gave birth to a child, and for quite awhile afterwards was delicate and weakly.

. The plaintiff testified that on January 25, 1908, she left Greenwood, Ark., for Haileyville, Okla., arriving at the latter place between 2 and 3 o'clock in the morning; that she expected her brother-in-law, W. E. Crawford, to meet her at the depot upon her arrival, and knew that a telegram was sent to accomplish this; that she was going to his house to be confined; that when she left Greenwood she was in good health and strong, doing her own work; that she had a suit case to carry, weighing about 25 pounds, and the care of a little child about two years of age; that she was virtually a stranger in Haileyville, knowing but two families, and the night was dark; that finding no one at the depot to meet her, she started to try to find the home of W. E. Crawford, but was compelled to stop on the way at the house of a Mrs. Bowen—the reason she stopped there was because she became exhausted and could not go any further; that she did not know when she stopped that it was the house of Mrs. Bowen, or that she lived there, and did not find this out until she went into the house that night; that after she left the depot and before she got to Mrs. Bowen's house, she felt something tear loose in her side and began to hurt all over; that she was frightened because she had to go through timber all alone in the dark, and was so exhausted she had to stop, and she called, and Mrs. Bowen opened the door; that she said she was bound to stop and could not go any further; that at the time she felt something tear loose a fluid began to flow from her and continued to do so until the child was born; that she had given birth to one child before, and knew that she was having labor pains, and continued to have the same for eight days; that she suffered continually during this time; that she stayed at Mrs. Bowen's house until evening of that day, and then walked over to the Crawford home; that she was

in such misery that she could not stand to get in and out of a hack and stand the jolting; that her brother-in-law carried her suit case and she walked real slow and took her time for it; that the birth which followed was dry, all of the fluid having been expended during the eight days previous; that she had previous to that time been a strong, healthy woman, but that she had not been well since.  There was other evidence corroborative of the above which in our judgment it is not necessary to notice. .

The defendant introduced Henry Bowen who testified that at the time when Mrs. Crawford alighted from the train he recognized her; that she asked him if there was any one there to meet her, and he told her no one that he knew of; that she told him where she desired to go, and he took her grip and the baby and started across the tracks taking her to the roundhouse on the way toward her brother-in-law's home; that his mother's house lay between and that it was at her house where plaintiff stopped; that after assisting her this distance, desirous of taking the train which she came in on, he left her; he directed her as nearly as he could how to find his mother's house, and told her that his mother would show her the rest of the way; that it was about 600 yards or 3 blocks from the point where he left her to his mother's house; that he and Mrs. Crawford had previously been acquainted for several years past.  It was also made to appear that Mrs. Bowen's daughter had married the W. E. Crawford to whom the message was addressed.

Counsel for defendant have briefed this case in a thorough and exhaustive manner, and have left virtually nothing unsaid to establish that the injuries suffered by plaintiff did not result from the company's negligence in failing to deliver the telegram, and rely upon the principle enunciated in the case of *Hadley v. Baxendale,* 9 Exch. 341, 354, 23 L. J. Exch. 179, 182, that the breach of the contract entered into should not result in the judgment for damages here secured because they did not arise naturally according to the usual course of events from the breach of the contract, and could not be supposed to have been in contemplation of both parties at the time of their entering into the con-

tract. It is also urged that plaintiff was guilty of contributing to her own injury in that it was her duty on arriving at the station to have communicated with the Crawford home by telephone, or that she should have taken a carriage or conveyance rather than the course which she did pursue. This latter and other similar arguments lose much of their potency, however, in view of the fact that the company and all parties now have full knowledge of just what the result was of doing what plaintiff did, but it wholly ignores the fact that plaintiff had no such knowledge at the time when she was compelled to act. Of course, neither defendant nor plaintiff could have known, in advance, just what the result of the conceded negligence would be, neither party could have foretold that an acquaintance would have met Mrs. Crawford and assisted her to the extent of his ability, nor that she would accept such proffered assistance, nor if she did, on being deprived of it, that thereafter walking and carrying the suit case and taking care of her child would produce the results depicted in this case. But certainly defendant was bound to know that a woman who was about to be confined, and was then taking a train to go to a strange town where she would arrive between 11 and 12 o'clock at night with a heavy suit case to carry and a child to care for, would in all likelihood be subjected to a great hardship from which an accident of some character might be likely to happen in the event that she was left unattended and alone on her arrival. Certainly such a contingency was the natural, reasonable thing to have expected, and the message was sent and intended by both parties to prevent it. It was sent by the husband for the very purpose of excluding the possibility of just such a contingency as this, and the company knew it.

The Supreme Court of Kansas in the case of *Atchison, Topeka & S. F. Ry. Co. v. Parry,* 67 Kan. 515, 73 Pac. 105, says:

"Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that some injury would likely result therefrom; not that the specific injury would result. The question whether negligence is the proximate cause of an injury is ordinarily one of fact for the jury."

To the same effect, see *Barnes v. Western Union Tel. Co.,* 27 Nev. 438, 76 Pac. 931, 65 L. R. A. 666, 103 Am. St. Rep. 776, 1 Am. & Eng. Ann. Cas. 346, 349, in which the Supreme Court of Nevada, which allowed a recovery under circumstances in principle the same as these, said:

"We think in the case at bar that the evils and damage coming to plaintiff by reason of defendant's negligently causing him to be placed in the situation that he was on his arrival at Ogden and during his journey to Battle Mountain were reasonably within the contemplation of the parties, plaintiff and defendant, when they entered into their contract of sending the telegraphic message at Grand Junction, Colorado."

The Supreme Court of Florida in the case of *Western Union Tel. Co. v. Merritt et al.,* 55 Fla. 462, 46 South. 1024, 127 Am. St. Rep. 169, said:

"It is not essential that the message disclose all the details of the transaction to which it relates, nor the particular business intended. The rule in *Hadley v. Baxendale* does not require that the parties must have contemplated the actual damages which are to be allowed, but such as may reasonably be supposed to have been contemplated. It is not essential that the particular loss or injury sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of its negligence."

So we see that it is necessary only, in order that liability be incurred, so far as the question of contemplation or of proximate cause is concerned, that a person of ordinary caution and prudence should have foreseen that some injury would likely result from the negligence, and that it is not essential that the specific injury which did happen should have been in mind. In this connection it may be observed that counsel for defendant do not inform us just what contract they contend was entered into when the company accepted the message with an agreement to transmit it under the circumstances shown, but from their brief it would seem that they take the position that defendant could accept the message and the compensation for the transmission thereof, and then negligently fail to send it, or, if sending it, negligently fail to deliver it and be absolved from all liability for any damages, for it is not easy to contemplate any damages for which the com-

pany would be liable if it would not be liable for the specific damages suffered in this case. What damages would it have been liable for if not these? The company knew the condition of Mrs. Crawford; knew the purpose of her trip; knew that messages are sent because of the speedy method which they afford for communication, and that they are resorted to in urgent cases when a letter would be too slow; knew plaintiff was acting in reliance on delivery—thereby, on the face of the transmission, showing a necessity for promptness as well as of the importance of the engagement. The company must be held to know that which every one else knows—that a woman in the situation of this plaintiff, under the circumstances shown, requires help and assistance, and that for her to be landed at midnight in a strange town, without help and assistance, is to subject her to perils of which she would be relieved, and which are liable to be followed by the most serious consequences. It is easy after the fact to say of the efforts which she made to relieve herself of the unfortunate situation in which the company's negligence had placed her that they were not the things which she should have done, and that she should have done something else. Any one knows that now, but no one knew it when she was compelled to act; and it lies not in the mouth of the company, after its negligence had placed her in the distressing situation in which she found herself, to say that any act was contributory negligence on her part unless all reasonable men would agree that the same was unreasonable, and that a verdict of a jury finding it reasonable, would be set aside as unsupported. She was met at the train by a gentleman who was an acquaintance of hers, remotely connected by marriage, who volunteered to take her grip and assist her on her way to a point where he could direct her in the right course. He doubtless—and it is reasonable to assume—advised her, and she in a strange community in the night, and alone, with the little child to care for, did that which doubtless appeared to her to be the only thing that she could do. Counsel argue that it was her neglect to get a conveyance, or that it was the carrying of the grip and the effort on her part to make her way alone,

which produced her injury, and not the neglect to deliver the telegram, notwithstanding its direct effect was to create the conditions which deprived her of the comfort and safety of being met at the train, and of the convenience of a necessary conveyance to her intended stopping place.

Judge Caldwell in the case of *Gulf, C. & S. F. Ry. Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454, speaks of the excessive subtility, over-refinement, and hair-splitting of the schoolmen which he says have crept into the administration of the law by the courts until its extent has sometimes brought the law into reproach, and it occurs to us under the evidence in this case, if we were to say that the injuries sustained by this woman were occasioned by something else than the failure to deliver the telegram in accordance with the contract into which the defendant had entered, we would make a bold entrance into the very realm so righteously condemned by Judge Caldwell. The addressee of the telegram in this case testified that arrangements had been made with him to meet the plaintiff, and that if he had received the telegram he would have done so with a carriage. This testimony was undisputed, is competent, and it must be conclusively found that he would have done so had the telegram been delivered.

This being true, the reason the plaintiff was left alone to make her way with her child and her grip through the night, which brought on the injuries, was that the telegram which would have afforded her a conveyance was not delivered, and this neglect is the definite, proximate cause of the damages. It is true some courts have held in cases of this character that recovery cannot be allowed, but other courts have accepted the same view which we take, and in our judgment they constitute the greater number, and carry by far the better reason to support their conclusions. *Barnes v. Western Union Tel. Co., supra; Western Union Tel. Co. v. Karr,* 5 Tex. Civ. App. 60, 24 S. W. 302; *Western Union Tel. Co. v. Powell* (Tex Civ. App.) 118 S. W. 226; *Western Union Tel. Co. v. Siddall* (Tex. Civ. App.) 86 S.

W. 343; *Western Union Tel. Co. v. Norton et ux.* (Tex. Civ. App.) 62 S. W. 1081; *Teale v. Western Union Tel. Co.,* 76 S. C. 248, 57 S. E. 117; *Green v. Western Union Tel. Co.,* 136 N. C. 489, 49 S. E. 165, 67 L. R. A. 985, 103 Am. St. Rep. 955; *Postal Tel. Co. v. Terrell,* 124 Ky. 822, 100 S. W. 292, 14 L. R. A. (N. S.) 927; *Western Union Tel. Co. v. Collins,* 156 Ala. 333, 47 South. 61; *Western Union Tel. Co. v. Hanley,* 85 Ark. 263, 107 S. W. 1168.

In the case of *Western Union Tel. Co. v. Hanley, supra,* the Supreme Court of Arkansas stated the facts in the first paragraph of the syllabus, saying:

"Where the sender of a telegram announcing to relatives that she will arrive at M. on a certain train, during the night, told the operator that, unless he was sure the message could be gotten through in time, she would not send it, but would remain at the place overnight, as the hack accommodations at M. were poor, and she did not want to get there in the night-time without some one to meet her, and on his assurances she filed the message, and proceeded, and the message was not sent and delivered in time for her relatives to meet her, and she arrived at M. after midnight, on a cold night, with sleet and snow on the ground, and, being unable to get a seat in the public hack, had to remain three-quarters of an hour in the poorly heated and deserted depot, waiting for the return of the hack, and suffered from the cold, her shoes freezing to her feet, and, as a result, was sick with cold and fever for several days, besides suffering mental anguish during the wait, she is entitled to recover damages."

In the case of *Western Union Telegraph Co. v. Siddall, supra,* the Court of Appeals of Texas held in the syllabus:

"Plaintiff's wife, a delicate woman, in poor health, was accompanied by her small child on a trip to visit her mother. It had been previously arranged that the mother should meet the wife at a junction point, assist her in changing cars, and accompany her to destination, and, for this purpose, plaintiff telegraphed the mother at the time of his wife's departure; but, the telegram not being promptly delivered, the mother failed to meet the wife, and the wife sustained mental and physical suffering therefrom. Held, that the telegraph company having notice of the intended trip, and that the wife was delicate, etc., her fright, worry, nervous shock, and annoyance on account of her mother's failure to meet her were not too remote for consideration as elements of damage."

In the case of *Western Union Tel. Co. v. Powell, supra,* the Court of Civil Appeals of Texas held in the syllabus:

"A message requesting the sendee to meet the sender and his wife at a station was notice to the telegraph company that the purpose of the message was to have the father of plaintiff's wife meet the sender and wife at the station, and that the wife was ill. It also knew that it was stormy. It failed to deliver the message, requiring the sender to hire a livery to take his wife to her father's home. Held, that the company was liable for the injuries sustained by the sender and his wife from the inclement weather as the proximate result of the failure to deliver the message."

It appears from the foregoing case that the message was sent from Hempstead, Tex. On the trial thereof in the Court of Civil Appeals counsel for the company contended that the injuries which were suffered were not the proximate result of its negligence in failing to deliver the telegram. The court in the discussion of the case said:

"The telegram itself shows that Long was requested to 'meet us,' evidently meaning both plaintiff and his wife. Plaintiff testified that he sent the telegram from Hempstead, and at the time he handed same to the operator he asked him if he could get 'the message through immediately, telling him that his wife was sick, and that he wanted her father to meet her at the train, to which he replied that 'he could get it through.' 'That I said in the message meet us, myself and wife. I think my statement was to met us at the train at 3:30 that evening.' It was shown that the weather was pleasant when they left Houston, and that it got cold and began to rain before reaching Hempstead. From this it clearly appears that the company at the time of the receipt of the message understood both from the message itself, as well as from the statement of the plaintiff, that the purpose of sending it was to have said Long, the father of plaintiff's wife, to meet them at the depot. The operator was informed that his wife at that time was sick, and it further appears from the testimony of the operator that he understood that Powell was accompanying his wife on the train, which would reach Bremond at 3:30 that afternoon. Appellant, it seems to us, is liable for such damages as might reasonably have been anticipated would have resulted from a failure of plaintiff's father to meet them at the train. It had notice of the fact that it was then cold and raining, and that plaintiff's wife was sick. Certainly it was within the contemplation of the parties to the contract that in the event of a failure

to transmit and deliver the telegram plaintiff would undertake to do what any reasonable man would do under the same or similar circumstances; that is, to go to the livery stable for the purpose of obtaining a conveyance to take his wife to her father's home. He could not remain in the depot with his sick wife, and, if in taking her to her father's home he and she suffered injuries from the inclement weather then prevailing, the same were such damages as could be recovered, because they were the proximate result of such failure of duty on the part of defendant. *Western Union Tel. Co. v. Campbell*, 36 Tex. Civ. App. 276, 81 S. W. 580; *Western Union Tel. Co. v. Karr*, 5 Tex. Civ. App. 60, 24 S. W. 302; *Western Union Tel. Co. v. Pruett* (Tex. Civ. App.) 35 S. W. 78. See, also, 27 Am. & Eng. Ency. Law (2d Ed.) p. 1059."

The case of *Western Union Tel. Co. v. Karr, supra,* is one wherein the facts are strikingly similar to those in the case at bar. The Texas Court of Civil Appeals, speaking through Mr. Justice Head, in holding the company liable thereon, spoke as follows:

"We think the negligence of appellant's servants in failing to deliver these messages was amply proven, and that it is legally liable for whatever actual damage resulted to appellees therefrom. As a result of the failure to deliver the first message, Mrs. Karr, with her 4-year-old child and a heavy valise, was compelled to find her way on foot from the depot to her friend's house, a quarter of a mile distant, at 12 o'clock at night, in company with a strange gentleman whom she had requested to assist her, instead of being met at the train by her friend, as would have been the case had appellant performed its duty; and by the failure to deliver the second message she was exposed to severely cold weather from Midland to Marienfield. Under these circumstances, we are unable to say that a verdict for $100 actual damage found by the jury is excessive, although no actual sickness resulted from appellant's acts."

And the Supreme Court of South Carolina in the case of *Toale v. Western Union Tel. Co., supra,* held that where a telegram showed that the sender contemplated using a horse and buggy, and the evidence disclosed that he told the operator that he lived in the country and wanted to get home that night, the question of whether the suffering he endured from an exposure to a rain storm, which he alleges he could have avoided if the message had been delivered in time, was proximately caused by

the negligent failure of the company to deliver the message, was for the jury.

The second and fourth propositions, involving error in the admission and exclusion of evidence and prejudicial statements made by the court, relate to the question of whether the message was written upon one of the company's blanks which provide that the company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within 60 days after the message is filed with the company for transmission. It is counsel's contention that this contract should be construed according to the laws of Arkansas, as the message originated in that state. Conceding this rule to be correct, yet as the laws of Arkansas have neither been pleaded nor proven, they will be presumed to be the same as those of Oklahoma. *Wagner v. Minnie Harvester Co.,* 25 Okla. 558, 106 Pac. 969; *Harn v. Cole,* 20 Okla. 553, 95 Pac. 415; *Schlotterbeck v. Schwinn,* 23 Okla. 681, 103 Pac. 854.

Section 9 of article 23 of the Constitution of Oklahoma reads as follows:

"Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void."

Under this provision practically all of the remaining exceptions of counsel for defendant are disposed of as manifestly this renders null and void the provision of the contract relied upon. *Gray v. Reliable Ins. Co.,* 26 Okla. 592, 110 Pac. 728.

The action of the court in giving and in refusing to give certain instructions mentioned by counsel has had our attention. In view of the uncontradicted evidence in the record no error appears therein, and an extended discussion we believe is not necessary. The cause on the issues made was fairly submitted to a jury, the damages suffered were proximately caused by defendant's failure to deliver the message, and the defendant has enjoyed a trial which, so far as we are able to discern, was free

and clear from prejudice. Therefore the judgment rendered by the trial court is sustained.

All the Justices concur.