LITTLE ROCK & M. R. Co. *v.* ST. LOUIS, I. M. & S. RY. Co. *et al.*

*(Circuit Court, E. D. Arkansas.   March 20, 1890.)*

CARRIERS—CONNECTING LINES—THROUGH ROUTES AND RATES—INJUNCTION.

A court of equity has no power, either at common law or under the interstate commerce act, to compel a railroad company to enter into a contract with another company for a joint through rate and joint through routing of freight and passengers.

*(Syllabus by the Court.)*

In Equity.

The material allegations in the plaintiff's bill are that—

"The Little Rock & Memphis Railroad Company is engaged in operating the railroad between the cities of Memphis, in the state of Tennessee, and Little Rock, in the state of Arkansas. That its traffic consisted principally in the transportation of through passengers and freight from points east of the Mississippi river, bound to western and southern points, in the states of Arkansas, Texas, and elsewhere, and in the reverse direction. The St. Louis, Iron Mountain & Southern Railway Company, a corporation created by the laws of Arkansas, and an inhabitant of said district, operates a railroad from the city of St. Louis, in the state of Missouri, passing through the city of Little Rock, to the city of Texarkana, on the boundary between the states of Arkansas and Texas, where it makes connection with extensive systems of railroads in Texas. The defendant the Hot Springs Railroad Company is engaged in operating a railroad in the state of Arkansas from Malvern, on the line of the St. Louis, Iron Mountain & Southern Railway, to Hot Springs. Said Hot Springs Railroad Company is a corporation created by the laws of Arkansas, and is an inhabitant of said district. Said St. Louis, Iron Mountain & Southern Railway is one of the largest feeders of the road operated by your orator, contributing during the half year ending June 30, 1888, 3,387 passengers, of whom 1,591, or nearly half, came upon through tickets over the Little Rock & Memphis Railroad and the St. Louis, Iron Mountain & Southern Railway, with a traffic substantially equal in the opposite direction. The said St. Louis, Iron Mountain & Southern Railway is by far the most important connection of your orator, the exchange of passengers with it during the six months ending June 30, 1888, amounting to 11,139. In May, 1888, the St.

Louis, Iron Mountain & Southern Railway opened a branch road from Bald Knob, in the state of Arkansas, to Memphis, in the state of Tennessee, running parallel with your orator's line, and built for the express purpose of competing with it. It is 15 miles longer than your orator's line, and its facilities for accommodating through traffic at Memphis are much inferior to those of your orator's. For these reasons, notwithstanding the opening of the Bald Knob branch, the traffic of your orator remained substantially unchanged as long as it had equal facilities afforded by defendants, the traveling public preferring it to its adversary. For the purpose of breaking down the legitimately acquired business of your orator, and crushing a rival, the St. Louis, Iron Mountain & Southern Railway Company has directed all the railroads connecting with it to call in all through tickets reading over the Little Rock & Memphis Railroad, and thence over the St. Louis, Iron Mountain & Southern Railway, leaving on sale only the through tickets over the Bald Knob branch; and the Hot Springs Railroad Company, conspiring with it to injure your orator, has signified its assent to this direction, and has actually withdrawn the tickets over your orator's line in connection with the St. Louis, Iron Mountain & Southern Railway, and refuses to sell the same, though requested by your orator to do so, but still continues to sell tickets over the Bald Knob branch of the St. Louis, Iron Mountain & Southern Railway. The object of this is to force the traveling public to purchase tickets exclusively over the Bald Knob branch, or else to pay higher local rates, and be subjected to the annoyance of repeated purchase of tickets and rechecking of baggage; and, unless something is done for the protection of your orator, all through traffic will be diverted over the Bald Knob branch, to the great inconvenience of the public, and great and unjust pecuniary loss to your orator. Wherefore your orator prays that the said defendants may be required to answer this bill, but not under oath; and that a mandatory injunction may issue from this court commanding said defendant, the Hot Springs Railroad Company, and its agents, to sell, to all applicants going on its road to Memphis and to points beyond, tickets over the road of your orator on the same terms, and at the same price, as it charges to passengers who get tickets over said Bald Knob branch, and to check baggage with the same."

The defendant the St. Louis, Iron Mountain & Southern Railway Company filed the affidavits of its general and assistant general passenger and ticket agents, to be read on the hearing of the motion for a preliminary injunction. These affidavits admit that tickets reading via the Little Rock & Memphis Railroad, in connection with the St. Louis, Iron Mountain & Southern Railway Company, have been withdrawn from sale, but deny that this was done for the purpose of breaking down the plaintiff's road, and say it was done for the purpose of legitimately building up the passenger traffic over the St. Louis, Iron Mountain & Southern Railway, and its Bald Knob branch to Memphis. The assistant freight and ticket agent states that—

"The arrangement at present existing between the railroads forming a through route and rate from Hot Springs to Memphis, and points east of there, exists by reason of a contract or agreement between the St. Louis, Iron Mountain & Southern Railway Company and railroads east of Memphis. By way of illustration, the through-route agreement now in existence between Malvern, where the St. Louis, Iron Mountain & Southern Railway connects with the Hot Springs Railroad and Norfolk, is as follows: The St. Louis, Iron Mountain & Southern Railway Company, which has a line of its own from Malvern to Memphis, has, by agreement with the Memphis & Charles-

ton R. R. Co., and the East Tenn., Va. & G. R. R. Co. and its eastern connections to Norfolk, arranged for a through rate and route, and for a *pro rata* division of revenue derived therefrom. In making this arrangement, the St. Louis, Iron Mountain & Southern Railway Company, having a line of its own from Malvern to Memphis, had no occasion to and did not include the Little Rock & Memphis R. R. in such agreement. I have read that portion of the brief of J. S. Blair in the case of L. R. & M. R. R. Co. v. E. T., V. & G. R. R. Co. and St. L., I. M. & S. Ry. Co., 3 Int. St. Com. R. 1. The statements made by him on pages 4 and 5 of said brief is a correct explanation of the manner in which agreements for through routes and a through rate between two or more distinct railway companies are made, and I adopt as a part of this affidavit so much of the language employed by Mr. Blair as follows, to-wit: 'The issuing by one road of tickets to be used beyond its own terminus is, for various reasons, a matter of agreement between the companies. From whichever side the proposition comes, or in whatever manner, the other party has always been regarded as at full liberty to decline to sell on the one hand, or refuse to honor on the other. The consent has not always been in writing, although at present every ticketing arrangement of this kind to which the Iron Mountain road is a party is evidenced by a written agreement. Sometimes the arrangement is one requiring little, if any, negotiation as to the division to be made of the proceeds of the sales of the tickets; but very frequently the basis of division requires serious consideration, and, if the parties fail to agree, there is no standard or custom to which to appeal, and the negotiation terminates. When the parties have agreed upon all the terms, the party issuing does not obtain the tickets from any or all the roads over which they are to be used, but prints them, and at the end of every month reports to every road the number and kind of tickets sold, and the amount for which it is responsible. It receives similar reports from other companies who have issued over its road, and later on the differences are paid. The coupon, when taken up by the conveying road, is retained, and not transmitted to the issuing road as a voucher. Where the rate is made by the parties participating in the traffic without influence or control by competing connections, it consists of the sum of the local rates, and the division apportions to each its own local. But, where shorter and competing routes force the price of the ticket below the sum of the locals, the rate is divided on certain agreed bases, which vary according to circumstance. For illustration, if a rate were to be made to Texarkana from Atlanta via Chattanooga, Cincinnati, St. Louis, Bald Knob, and Little Rock, it would be no greater than via Chattanooga, Memphis, and Bald Knob, and each road could not get its local rate, but in the division regard is first to be had for those roads which would divide the Chattanooga, Memphis & Bald Knob rate. That is to say, the passenger going by way of Cincinnati and St. Louis travels between Atlanta and Chattanooga and between Bald Knob and Texarkana over the same rails as if he went by Memphis. For these portions of his journey the railroads should receive the same sum as if he had taken the Memphis route, and, these amounts having been taken, the remainder is divided among the other roads on a mileage basis, subject, however, to such arbitraries as are agreed upon by them.'

The defendants the Hot Springs Railroad Company and J. N. Conger answered jointly, alleging, among other things, that the Hot Springs Railroad does not connect with the plaintiff's road. That it connects at Malvern, its eastern terminus, with the St. Louis, Iron Mountain & Southern Railway, and plaintiff's road terminates at Little Rock, a distance of 43 miles from Malvern. That the Hot Springs road does not sell through passenger tickets over its line in connection with other rail-

roads, or prorate in the matter of charges with any other road, or engage in interstate traffic. On the contrary, it sells a local ticket over its line from Hot Springs to Malvern. That the defendant Conger is the agent of the St. Louis, Iron Mountain & Southern Railway Company at Hot Springs for the sale of through tickets over said road and its connecting lines. That these tickets are prepared by and under the authority of such companies as have agreed to prorate the charges of transportation, and form connecting lines, and are furnished by said companies, or by the St. Louis, Iron Mountain & Southern Railway Company, to the defendant Conger to be sold by him. That—

"The defendants are perfectly willing that the tickets of the plaintiff, or any other carrier that has or may unite with the St. L., I. M. & S. Ry., which is the only connecting line with the Hot Springs Railroad, for the purpose of forming through rates and agreeing upon a basis for the division of charges, may be sold at any and all stations of the defendant the Hot Springs Railway; but until plaintiff shall have made such arrangements with such other connecting lines as will secure the recognition by them, and especially by the St. L., I. M. & S. Ry. Co., of such tickets, respondents would not feel warranted in undertaking to sell through tickets over plaintiff's road. It is true, as alleged, that the Hot Springs Railroad Company has refused to check baggage of passengers over plaintiff's road, but it has done so simply because it was advised that no arrangement existed, as between the St. L., I. M. & S. Ry. Co. and the plaintiff, for the receiving and transporting of baggage so checked over the line of the St. L., I. M. & S. Ry., and that said road would not receive baggage so checked. Further answering, defendants say that they, and each of them, and the plaintiff, are all citizens of the state of Arkansas, said corporations having been organized and incorporated under the laws of said state, and the said J. N. Conger residing at Hot Springs, in said district. The Hot Springs Railroad does not do business as a carrier of interstate commerce, but its line begins and ends in this state, and its passenger traffic is wholly local. It does not issue through tickets in connection with other lines."

*U. M. & G. B. Rose*, for plaintiff.
*Dodge & Johnson*, for St. Louis, I. M. & S. Ry. Co.
*John M. Moore*, for Hot Springs R. Co. and J. N. Conger.

CALDWELL, J., (*after stating the facts as above.*) The precise question in this case is, can a United States circuit court, in the exercise of its equity powers, require a railroad company engaged in interstate commerce traffic, to enter into an agreement with another railroad company, engaged in like traffic, for a joint through routing and joint through rates, and, upon the refusal of the company to comply with such a requirement, may the court itself make such a contract for the parties? It is apparent from the affidavits, and is common knowledge, that to effect through routing and through rates over independent lines of railroads, contract relations must be established between the companies operating the roads. The share which each road is to receive of the through rate, the mileage rate to be paid or allowed on cars passing over each other's lines, the method of adjusting losses, the arrangement of time-tables, the rates for passengers and freight, and other matters,

are necessarily matters of contract. The solvency of the respective lines, their ability to handle in a satisfactory manner the joint traffic, and their ability to contribute to that traffic, and various other considerations, enter into and influence the terms of such contracts. The common law imposes no obligation on railroad companies to enter into such contracts. "At common law a carrier is not bound to carry except on his own line, and we think it quite clear that, if he contracts to go beyond, he may, in the absence of statutory regulations to the contrary, determine for himself what agencies he will employ." *Atchison, T. & S. F. R. Co.* v. *Denver & N. O. R. Co.*, 110 U. S. 667–680, 4 Sup. Ct. Rep. 185. Making contracts for parties "is not within the scope of judicial power." *Express Cases*, 117 U. S. 1–26, 6 Sup. Ct. Rep. 542, 628. In the case last cited the court, speaking of the decree of the court below fixing and regulating the terms upon which the railroad company and the express company should do business, said:

"In this way, as it seems to us, the court has made an arrangement for the business intercourse of these companies, such as, in its opinion, they ought to have made for themselves," and that, we said in *Atchison, T. & S. F. Co.* v. *Denver & N. O. R. Co.*, 110 U. S. 667, 4 Sup. Ct. Rep. 185, followed at this term in *Pullman's Palace Car Co.* v. *Missouri Pac. Ry. Co.*, 115 U. S. 587, 6 Sup. Ct. Rep. 194, could not be done. The regulation of matters of this kind is legislative in its character, not judicial. To what extent it must come, if it comes at all, from congress, and to what extent it may come from the states, are questions we do not now undertake to decide; but that it must come, when it does come, from some source of legislative power, we do not doubt." 117 U. S. 29, 6 Sup. Ct. Rep. 556.

See, to the same effect, *Kentucky & I. Bridge Co.* v. *Louisville & N. R. Co.*, 2 Int. St. Com. R. 351, 37 Fed. Rep. 567.

Has the jurisdiction been conferred by the act of congress? Complainant maintains that it has by the third section of the interstate commerce act. It would serve no useful purpose for the court to engage in an extended discussion of this question. It has been discussed and decided by the interstate commerce commission in *Little Rock & M. R. Co.* v. *East Tennessee, V. & G. R. Co.*, 3 Int. St. Com. R. 1. In that case the present plaintiff was seeking the same relief that it seeks in this case, and its petition was dismissed, on the distinct ground that the act of congress does not, as does the present English statute, invest the commission or the courts with the power to compel companies to enter into through routing and through rate contracts. The case of *Chicago & A. R. Co.* v. *Pennsylvania R. Co.*, 1 Int. St. Com. R. 9, Id. 360, and the opinion of Judge JACKSON in *Kentucky & I. Bridge Co.* v. *Louisville & N. R. Co.*, 2 Int. St. Com. R. 351, 37 Fed. Rep. 567, are to the same effect. I am satisfied to rest the decision of the question on the reasoning of the opinions in the cases cited, which, to my mind, cannot be satisfactorily answered.

The sole ground of complaint in this case is that the principal defendant refuses to enter into a contract with the plaintiff for through routing and through rating over its road. No discrimination against the traffic carried on by the plaintiff over its own line is claimed. The defendant

company receives and carries passengers and freight that have come over, or that are destined to go over, the plaintiff's road, without any discrimination on that account; but its relation to such passengers and freight begins where they are received, and ends where the plaintiff's road receives them. What the plaintiff seeks to accomplish by this suit is a practical extension of its line over the defendant's line beyond Little · Rock. The plaintiff's road extends from Memphis to Little Rock; the defendant's road extends from Memphis to Little Rock, and from the latter place south, to Texas. The abstract justice of requiring the defendant to give up, for the plaintiff's benefit, all or a part of the advantages gained by the defendant, by building a competing line to the plaintiff's road from Memphis to Little Rock, is not very obvious. Prior to the construction by the principal defendant of this competing line the plaintiff enjoyed a monopoly of the traffic between Little Rock and Memphis. Competing lines afford the best and surest protection the public can have against oppressive rates, and, however injuriously the business of the plaintiff's road may have been affected by the construction of the competing line, the public was not injured by it, and is not here complaining. Is it, under these circumstances, an unfair or unjust preference or discrimination for the defendant, in the sale of tickets, to prefer its own line to that of the plaintiff? If it is, the incentive to the construction of competing lines will be very much lessened. Roads enjoying a monopoly of a given traffic will be benefited, but the public will probably be injured. But it is unnecessary to discuss or decide this aspect of the case. The court has no jurisdiction to grant the relief prayed for. The motion for a mandatory injunction is denied.

At a later day in the term the defendants filed a demurrer to the bill, which was sustained, and the bill dismissed.