### ST. LOUIS & S. F. R. CO. v. WM. BONDIES & CO.

No. 4522—Opinion Filed April 10, 1917.

Rehearing Denied June 19, 1917.

(166 Pac. 179.)

(Syllabus by the Court.)

**1. Carriers—Carriage of Goods—Action for Breach—Petition—Sufficiency.**

Where the petition in an action for damages alleges the making of an enforceable contract, and contains sufficient averments showing a breach thereof by the defendant,

from which plaintiff has sustained a detriment for which the law affords redress, such petition states a cause of action, and is sufficient to withstand a general demurrer.

## 2. Same—Shipping Contracts—Validity.

Where prior to the amendment of June 18, 1910, of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24. Stat. 379, as amended by Act June 18, 1910, c. 309, 36 Stat. 539)'; a carrier entered into a contract with a shipper to transport certain freight to a point beyond the terminus of its own line, over a certain designated route, such contract was valid, and an action would lie for a breach thereof resulting in damages to the shipper.

## 3. Carriers—Carriage of Goods—Interstate Commerce Act.

Section 6 of the act to regulate commerce (U. S. Comp. St. 1916, sec. 8569) requires the tariffs filed by carriers with the Interstate Commerce Commission to show all privileges and facilities granted or allowed, and all shippers and carriers are charged with notice of the existence thereof.

## 4. Carriers—Carriage of Goods—Contracts.

Where a carrier contracted to transport a shipment of corn from D. to A. over the line of a certain connecting carrier, upon whose line a milling in transit privilege was allowed at A., and breached its contract, delivering said shipment into A. over the line of another carrier, thereby depriving consignee of the milling in transit privilege at A. upon the line over which it agreed to transport same, said carrier will be liable for all damages proximately caused by its failure to deliver over the line designated in its contract.

## 5. Appeal and Error—Review—Harmless Error.

Allegations in plaintiff's petition alleging the execution of a certain contract therein set out are admitted by failure of defendant to deny the execution thereof under oath, and the admission of oral evidence to prove the terms of said contract is harmless.

## 6. Evidence—Judicial Notice.

The court will take judicial knowledge of the meaning of the term "milling in transit privilege," and the admission of oral evidence to explain the same is not error.

Error from County Court, Bryan County; J. L. Rappolee, Judge.

Action by William Bondies, trading under the name of William Bondies & Co., against the St. Louis & San Francisco Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and E. H. Foster, for plaintiff in error.

J. M. Crook, for defendant in error.

HARDY, J. William Bondies, a sole trader, under the trade name of William Bondies & Co., brought this action against defendant, St. Louis & San Francisco Railroad Company, to recover damages for breach of a contract entered into between plaintiff and defendant for the transportation of three cars of corn from Durant, Okla., to Alexandria, La. The parties will be referred to as they appeared in the trial court.

The amended petition alleged that plaintiff delivered for shipment to defendant three cars of corn, consigned to Barnett & O'Neal at Alexandria, La.; that plaintiff made a contract in writing with defendant that said corn should be routed into Alexandria by way of Rock Island railroad and Rock Island delivery; that defendant instead of routing and delivering said corn over and by way of the Rock Island railroad, routed and delivered same over some other line of railroad than that of the Rock Island, and thereby breached its contract with plaintiff; that the Rock Island railroad had a tariff and custom of making a reduced rate on carload shipments for reshipment by the same consignee to points on its line; that by reason of defendant's breach of its said contract, plaintiff's consignees were deprived of the milling in transit rate which had been guaranteed to them by plaintiff, and were compelled to pay the local rate of transportation upon reshipment of same to its ultimate destination, thereby causing a loss to said Barnett & O'Neal of six cents per hundredweight upon said corn, which plaintiff was compelled to pay in the sum of $110.05, for which he prayed judgment. General demurrer was filed and overruled. Issues were joined and trial had to the court without a jury, which resulted in a finding and judgment in favor of plaintiff, from which defendant appeals.

The petition alleges the making of a contract and a breach thereof and damages resulting from said breach. This being true, and the contract being an enforceable one, the petition stated a cause of action, which entitled the plaintiff to recover at least nominal damages, and was therefore good against a general demurrer. This rule was first announced in Gabriel v. Kildare Elevator Co., 18 Okla. 318, 90 Pac. 10, 10 L. R. A. (N. S.) 638, 11 Ann. Cas. 517. The second paragraph of the syllabus in that case is as follows:

"A petition which alleges the making of an enforceable contract and a breach by the defendant will entitle the defendant (plaintiff) to nominal damages, and is sufficient to withstand a general demurrer."

The same rule is recognized in Midland Valley Railroad Company v. Larson, 41 Okla. 360, 138 Pac. 173, where it is stated in the first paragraph of the syllabus:

"Where the petition, in an action for damages, contains sufficient statements of facts to show the court that plaintiff has sustained a detriment, and the amount thereof, and that defendant had wrongfully caused same, and that it is a detriment for which the law affords redress, such a petition states a cause of action."

And even though plaintiff had mistaken the damages which he was entitled to recover, such mistake would not be fatal to the petition or render it vulnerable to attack by a general demurrer, as the petition showed by its allegations that plaintiff was entitled to some relief. Welborn v. Dixon, 70 S. C. 108, 49 S. E. 232, 3 Ann. Cas. 407; Colrick v. Swinburne, 105 N. Y. 503-507, 12 N. E. 427; Weaver v. Miss. & Rum Riv. Boom Co., 28 Minn. 542; 11 N. W. 114. The court therefore committed no error in overruling the demurrer to the petition.

It is contended that plaintiff was without right to require the defendant to transport a shipment in interstate commerce by any designated route. As this shipment was delivered to defendant prior to the amendment of the Interstate Commerce Act of June 18, 1910, at a time when a carrier of goods in interstate commerce to points beyond its own line had the right to select the route and connections over which the shipments should move, defendant had the right to determine what agencies it would use in transporting same to its destination. A., T. & S. F. R. Co. v. D. & N. O. R. Co., 110 U S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291; L. R. & M. R. R. Co. v. St. L., I. M. & S. R. Co. (C. C.) 41 Fed. 559; 5 Thompson on Neg. sec. 6554. Plaintiff concedes this, but contends that defendant exercised its right under the rule relied upon, and did contract and agree to carry the shipment in question to its destination by way of the Rock Island railroad, and that such contract was equivalent to an extension of its lines for the purpose of carrying it over the designated route, and this position, in view of the findings of the court, is in our opinion well taken. In A., T. & S. F. R. Co. v. D. & N. O. R. Co., supra, the court said:

"At common law, a carrier is not bound to carry except on his own line, and we think it quite clear that if he contracts to go beyond he may, in the absence of statutory regulations to the contrary, determine for himself what agencies he will employ. His contract is equivalent to an extension of his line for the purposes of the contract, and if he holds himself out as a carrier beyond the line, so that he may be required to carry in that way for all alike, he may nevertheless confine himself in carrying to the particular route he chooses to use."

Having selected the route over which said shipment should move and agreed to transport same in accordance with such selection, defendant was bound to forward said corn over the route agreed upon, and for a failure so to do was liable for such damages flowing from its breach as ought reasonably to have been foreseen at the time of entering into the contract.

The principal contention is that plaintiff is not entitled to recover the damages claimed in the absence of notice to or knowledge on the part of the defendant of the special contract between plaintiff and his consignees, and it is urged that the damages claimed are special in their nature, and were not such as were within the reasonable contemplation of the parties, and because notice was not given of such special agreement at the time the contract of shipment was entered into, that plaintiff is therefore not entitled to recover such damages. The damages are alleged and shows to have occurred because of the negligence of defendant in misrouting the shipment, whereby plaintiff's consignees were deprived of the milling in transit privilege accorded by the Rock Island railroad at Alexandria, La. Because of the loss of this privilege, consignee refused to accept the shipments, unless plaintiff would reimburse them in an amount equal to the increased freight rates, which they were compelled to pay upon the shipment out of Alexandria to its ultimate destination. The decision of this question turns upon the point whether at the time the contract of shipment was entered into defendant was charged with notice of the existence of the transit privileges accorded by the Rock Island Company, and whether the parties under the circumstances should be held to have had in contemplation the resulting damages which would occur by reason of a loss of this privilege. It is not necessary under the decisions in this state that the parties must have contemplated the actual damages which in fact resulted in order that liability be incurred. It is sufficient, so far as the question of contemplation or of proximate cause is concerned, that a person of ordinary caution and prudence should have foreseen that some injury would likely result from the negligence, and it is not essential that the specific injury which did happen should have been in the minds of the parties. Western Union Telegraph Co. v. Crawford, 29 Okla. 143, 116 Pac. 925, 35 L. R. A. (N. S.) 930; A., T. & S. F. R. Co. v. Parry, 67 Kan. 515, 73 Pac. 105; Western Union Telegraph Co. v. Merritt et al., 55 Fla. 462, 46 South. 1024, 127 Am. St. Rep. 169; 4 R. C. L. sec. 395, p. 938.

Section 6 of the Interstate Commerce Act provides for the filing of schedules and rates,

and also requires said schedules to contain the classification of freight in force, and to state separately the terminal charges, storage charges, icing charges, and all other charges which the commission may require, and all privileges or facilities granted or allowed, and all rules or regulations which in any wise change, affect, or determine any part of the aggregate of such rates, fares, or charges or the value of the services rendered to the passenger, shipper, or consignee. Construing this section, the courts have held that carriers and shippers are charged with notice of the rates and regulations prescribed therein. L. & N. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; S. Cov. & Cinn. R. Co. v. Covington et al., 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350, L. R. A. 1915F, 792; M., K. & T. R. Co. v. Ashinger, 63 Okla. 120, 162 Pac. 814. The same statute which requires the filing of the rates also requires that said tariffs shall show all privileges in connection therewith. Kile & Morgan v. Deepwater R. Co., 15 Interst. Com. Com'n 238. And the same rule which imputes notice of such rates and regulations to carriers and shippers would also charge them with notice of such privileges.

When plaintiff routed his shipment by way of the Rock Island railroad and Rock Island delivery, defendant was bound to know of the existence of the milling in transit privilege, and also to know that a failure to carry said shipment according to its contract, by way of the Rock Island railroad, upon which road such privilege was available, would deprive plaintiff's consignee of such privilege, and that the natural and proximate result thereof would be, upon a reconsignment of said shipment to other points beyond Alexandria on the lines of said Rock Island railroad, that the local rates of shipment would have to be paid.

The first transit privilege in the United States was inaugurated by the Nashville & Chattanooga railroad about 1870 at Nashville, Tenn., to meet the competition of boats plying on the Cumberland river. Duncan & Co. v. N. C. & S. L. R. Co., 35 Interst. Com. Com'n 480. Since that time the growth of privileges of this character has been very extensive. Such privileges are of benefit to the carriers, dealers, and the public, and this is particularly true of corn, the article composing the shipment here involved. Blodgett Milling Co. v. C., M. & St. P. R. Co., 23 Interst. Com. Com'n 451. And it is a fact that the commercial operations of the country have in many instances grown up upon the exercise of transit privileges where same could not have been developed in any other

way. In re Transportation of Woods, Hides, and Pelts, 23 Interst. Com. Com'n 171.

The underlying principle of all transit arrangements is that the same commodity which moved to the transit point shall move therefrom in a more or less changed form (Maley & Wertz v. L. & N. R. Co., 36 Interst. Com. Com'n 658), and such service is based on the theory that the transportation contract has not been completed, and that the entire shipment from point of origin through the transit point or points to destination is the same in principle as if the shipment had moved through wthout transit (Board of Trade v. A. A. R. R. Co., 39 Interst. Com. Com'n 651).

It has been the uniform holding of the Interstate Commerce Commission in cases where a carrier has negligently misrouted a shipment in interstate commerce by reason of which negligence the shipper or consignee is required to pay higher rates for transportation, or is deprived of a transit privilege for the loss of which damages result, to award reparation in all such cases. Kile & Morgan v. Deepwater R. Co., supra; Conifer Lumber Co. v. L. & N. R. Co., 25 Interst. Com. Com'n 272; Mewman Lumber Co. v. Miss. Cent. R. Co. et al., 26 Interst. Com. Com'n 97; Mason Bros. v. Sou. Pac. R. Co. et al., 28 Interst. Com. Com'n 402; Gray & Smith v. Pa. Co., 34 Interst. Com. Com'n 25; Van Dusen Harrington Co. v. C., M. & St. P. R. Co., 35 Interst. Com. Com'n 172. In Kile & Morgan Co. v. Deepwater R. Co. the Chesapeake & Ohio Railway Company failed to forward a carload of lumber consigned to New Haven, by way of Harlem River, as specifically routed by shipper, thereby depriving complainant of the alleged privilege of reconsignment without extra charge offered by the New York, New Haven & Hartford Railroad at Harlem River. The claim for reparation was denied, since provision for reconsignment was not contained in the tariffs filed with the commission. It was held, however, that a shipper could not be deprived through a carrier's negligence of any lawful privilege offered by another carrier. In denying the carrier's contention that one guilty of negligence should be held responsible for such consequences only as could be foreseen or reasonably anticipated, the commission said:

"Carriers at fault in misrouting are liable for damages represented by higher charges than would have been lawfully assessable had the misrouting not occurred, and we do not adopt defendant's contention that liability attaches for such damage only as can be reasonably seen or anticipated. A shipper cannot be deprived through a carrier's negligence of any lawful privilege offered by

another carrier, especially after due diligence on his part to secure such advantage."

In Gray & Smith v. Pennsylvania Railroad Co., complainants were millers and grain dealers at Wooster, Ohio. They shipped a car of wheat from Perrysville, Ohio, to Johnson City, Tenn., which was misrouted by defendant, thereby entailing a loss of milling in transit privilege, to complainant's damage in the sum of $60. When the car reached Johnson City, the consignee refused to accept it because of the loss of the milling in transit privilege, unless complainant would afford protection to the extent of 6 cents per bushel, which was equivalent to $60 on the entire shipment. While indicating that complainant upon proper showing would be entitled to the relief sought, same was denied for lack of such showing. In Van Dusen Harrington Company v. Chicago, Milwaukee & St. Paul Railroad Company, the defendant collected on certain shipments of corn the local rates thereon from the point of origin to Minneapolis, plus a rate of 55 cents beyond Minneapolis. The corn was reshipped to various points in California. At the time of shipment, the tariffs governing same permitted a rate of 55 cents per hundred pounds on corn in carloads from points in Minnesota, Iowa, and Nebraska, including Minneapolis, and the points of origin to points in California, including the final destination of the shipments described. The charges thereon were held to be unlawful to the extent that they exceeded those accruing on the basis of the through rate of 55 cents per hundred pounds from points of origin to point of destination, and reparation was awarded accordingly. It appears clear that if plaintiff had applied to the Interstate Commerce Commission for the relief which he now claims, same would have been awarded without question. That the contract alleged is a legal one, we think is not open to question, and that a breach thereof and damages resulting from such breach have been proven is established by the findings of the court, and such a situation certainly appears to be one in which plaintiff is entitled to relief.

The defendant was charged with notice of the tariffs between Durant and Alexandria and the privileges connected therewith, and with such notice, contracted and agreed to carry the shipment by way of the Rock Island railroad, upon which route such privilege might be had, and it certainly is not an unwarranted conclusion to say that a reasonably prudent person engaged in the business of carrying freight in interstate commerce, as was defendant, would have anticipated that the loss of the milling in transit privilege at Alexandria would necessarily result

in damage; at least to the extent of the difference between the through freight rate and the two combined local rates, which is the amount of damages claimed in this case. It was not necessary to allege that defendant had notice of the contract between plaintiff and his consignees before plaintiff would be entitled to recover for the damages alleged.

Plaintiff was permitted over objection to prove by parol testimony that the contract of shipment entered into provided for transportation by way of the Rock Island railroad and Rock Island delivery. The error, if any, in so doing, was harmless. The petition alleged the making of such contract, and that same had been delivered to the agent of the Louisiana & Arkansas Railway Company at Alexandria, La. While the answer contained a general denial, same was not verified, and under section 4759, Rev. Laws 1910, the allegations of plaintiff's petition as to the execution of such contract stand admitted, and it was unnecessary to prove the execution thereof. Defendant in its answer, in addition to a general denial, alleged that a different contract from that relied upon by plaintiff had been executed and delivered to plaintiff, and attached as an exhibit to said answer what purported to be a copy thereof, and now claims that by reason of plaintiff's failure to file a verified denial its execution is admitted. If it were possible for the allegations of the petition alleging the execution of one contract to be admitted and the allegations of the answer setting forth a different contract to be also admitted by reason of the failure of the respective parties to verify the denials thereof, defendant cannot rely upon the statute because it proved by plaintiff's witness that the exhibit attached to its answer was not the contract entered into between the parties. Upon direct examination plaintiff had not interrogated the witness concerning the exhibit attached to the answer, and when defendant examined him with reference to the contract relied upon by it and proved that said exhibit was not the contract defendant waived the failure of plaintiff to file verified denial of its answer if same were necessary under the situation here presented.

In answer to a question, plaintiff testified that a "milling in transit" rate was a "privilege allowed to all grain men sending corn," and explained somewhat in detail what was meant by these words. It is claimed that this evidence was incompetent, among other reasons, because the evidence offered to prove said milling in transit "rate" was not that prescribed by the Interstate Commerce Act. The evidence complained of did not undertake to state what the "rate"

was between any particular points, but merely explained what was meant by a "milling in transit privilege." Such terms are now so generally used in commerce that their meaning is understood by carriers and shippers, and the custom is so generally recognized and understood that it may be said to be a matter of common knowledge as to the nature and existence of such privilege. Such phrase is generally understood to mean that the commodity moving to the transit point shall move therefrom in a more or less changed form; to illustrate: Logs may be sawed into lumber and forwarded to its ultimate destination, cotton may be compressed in transit, and corn and wheat may be ground into their resulting products and forwarded from the transit point. There is no question raised as to this being the true meaning of the phrase. In view of the ordinary and commonly accepted meaning of the phrase and the general existence of the privilege in commerce, the court was authorized to take judicial knowledge of the meaning thereof, and it was not error to permit proof of that which the court might judicially know. 2 Elliott, Con. secs. 60-64; 4 Wigmore, Ev. sec. 2582; 1 Chamberlayne's Mod. Law. Ev. c. IX.

The judgment is therefore affirmed.

All the Justices concur.