## SPRING v. MAJOR.

No. 16733. Opinion Filed June 21, 1927.

Rehearing Denied Nov. 15, 1927.

(Syllabus.)

**1. Bills and Notes—Duration of Note's Negotiability.**

Under the provisions of the Negotiable Instrument Law of this state, a promissory note negotiable at the time it was made remains negotiable until it is discharged or until it is restrictively indorsed.

**2. Same—"Restrictive Indorsement."**

Under the Negotiable Instrument Law, a restrictive indorsement is: (1) One which prohibits further negotiation: (2) constitutes the indorsee the agent for the indorser: or (3) vests the title in the indorsee in trust for or to the use of some other person.

**3. Same—Indorsement Without Recourse not Restrictive.**

In this state an indorsement of a negotiable promissory note transferring the note, and all the interest of the indorser, together with the mortgage securing the same without recourse, is not a restrictive indorsement and does not affect the negotiability of the instrument.

**4. Same—Holder in Due Course.**

Where a negotiable promissory note is transferred on the due date by the payee for full value to a purchaser in good faith without notice of any infirmity in the title of his indorser, the purchaser becomes a holder in due course, and the note in his hands is not subject to any equities existing between the prior parties.

**5. Same—Action by Indorsee of Note—Lack of Defense.**

Where in an action before the court, without a jury, by an indorsee of a negotiable promissory note against an accommodation maker, where the evidence shows that plaintiff bought the note in good faith and for full value before same was overdue, and without notice of dishonor or any infirmity in the title, and where a copy of the instrument is attached to the petition and defendant files an unverified answer setting up (1) a general denial; (2) a denial of indebtedness; (3) that defendant is not advised as to whether or not plaintiff is the owner of the note sued on; (4) that plaintiff waived collateral sufficient to pay the note; (5) that plaintiff extended time without notice; (6) that the principal maker of the note, or its receiver, collected moneys which should have been but were not applied on the note; (7) that plaintiff was sole legatee of another accommodation maker whose estate should be made to contribute, and where the proof shows that such estate was insolvent, and his personal representative was not made a party to the suit, no substantial issue of fact is raised except as to the amount due on the note, and it is therefore the duty of the court to ascertain the amount and render judgment therefor to plaintiff. and it is error for the court upon such allegations and proof to provide in said judgment that the same shall be discharged upon the payment of one-half thereof upon the theory that the estate of the deceased accommodation maker should contribute such proportion, and that therefore the sum should be chargeable to and against the plaintiff as his sole legatee.

Commissioners' Opinion, Division No. 1.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by Janie B. Major against Earl Spring, to recover upon a promissory note. Judgment for plaintiff for one-half the amount of the note. Plaintiff and defendant each appeal. Reversed and remanded, with directions.

Bailey & Hammerly, for plaintiff in error.

Bond, Melton & Melton, for defendant in error.

BENNETT, C. This was a civil action tried without a jury before the district court of Jefferson county, and the parties will be designated as they appeared below.

There was a judgment for plaintiff against Earl Spring for $3,578.28, with interest thereon from and after the 3rd day of Oc-

tober, 1924, at the rate of ten per cent. per annum, together with attorney's fees in the sum of ten per cent. of the amount of said judgment, same being the balance due on a promissory note sued on in said action, but this judgment further provided that Earl Spring was entitled to contribution from plaintiff in the sum of one-half the amount of said judgment, and that upon the payment of one-half of said sum, said judgment against the defendant would be discharged in full.

Plaintiff and defendant each excepted, filed motions for new trial, and the same being overruled, lodged in this court petition in error and cross-petition in error, and their several contentions will be considered together.

Plaintiff's action was based upon a promissory note, copy of which was attached to the petition, which was couched in appropriate terms, and alleging among other things, that on the 1st day of October, 1916, for a good and valuable and sufficient consideration, the Ryan Cotton Oil Company, L. D. Major, A. A. Spring, and Earl Spring, made, executed, and delivered to Union Trust Company their certain first mortgage bond and note for $8,500; that same matured April 1, 1921, and that on said date the makers were unable to pay the same, and said note was by the payee sold and indorsed to plaintiff, who is now the owner and holder of the same for value, and that the balance due upon said note, after deducting proper credits, amounts to $4,233.78, no part of which has been paid.

The note in question, together with the indorsement thereon, is in the following words and figures:

"United States of America
   "State of Oklahoma.
"Trust Company First Mortgage Real Estate Bond.

"Oklahoma City, Oklahoma.   October 1, 1916.

"On the 1st day of April, A. D., 1921, for value received, the undersigned promises to pay to the order of the Union Trust Company, a corporation, at its office in Oklahoma City, Okla., the sum of $8,500, with interest at the rate of six per cent. per annum payable semiannually, evidenced until maturity by coupons hereto attached and with interest after maturity until paid at the rate of ten per cent. per annum.

"If default is made in the payment of any installment of either principal or interest when the same becomes due and payable,

then all of such principal and interest shall at the option of the holder of this note become due and payable without notice.

"The makers, indorsers, and guarantors of this note hereby waived protest, notice thereof, and diligence in collecting, and agree to pay ten per cent. of the amount as attorney's fees in case the note is placed in the hands of an attorney for collection after maturity hereof.

"Ryan Cotton Oil Company,
      "By L. D. Major, Pt.
"Attest:   T. S. Jones, Secy.-Treas.
"L. D. Major, A. A. Spring, Earl Spring."
   Indorsed on back:

"For value received, we hereby assign and transfer the within note and coupons, together with all interest in and rights under the mortgage securing the same to Janie B. Major without recourse, it being understood that this note shall be junior and inferior to the other two notes for $8,500 each secured by the first mortgage. Assignment is without recourse.

"Union Trust Company.
      "By R. A. Vose, President.
"Attest:   F. P. Johnston, Secretary.

"March 1, 1923, paid on within note $6,-100.00 as follows: Sept. 18, 1922, $5,557.76, March 1, 1923, $542.24.   Total $6,100.00."

The answer of the defendant is: First, a general denial; second, that defendant is not indebted to plaintiff; third, that defendant was not advised as to whether or not the plaintiff was owner of the note sued on; fourth, that plaintiff waived collateral sufficient to pay the note; fifth, that plaintiff extended time to the principal maker without notice to defendant; sixth, that Ryan Cotton Oil Company, or its receiver, received money that should have been applied upon the note; seventh, that plaintiff was the sole legatee of L. D. Major, a comaker, and that his estate should contribute, and that therefore his sole legatee should pay one-half of the liability.

A proper reply containing a specific denial of each defense set up by defendant was filed by plaintiff.

The sufficient answer to defenses 1 to 3 above is that the defendant's unverified answer raises no issue as to the execution of the note, and the legal effect is to place the instrument, with all its contents, terms, conditions, and stipulations therein expressed, together with their legal consequences, before the court. St. Louis & S. F. Ry. Co. v. Driggers et al., 65 Okla. 297, 166 Pac. 703; R. R. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103; R. R. Co. v. Bondies & Co., 64 Okla.

88, 166 Pac. 179; M. R. Ft. S. & G. R. Co. v. James Wilson, 10 Kan. 105, and cases cited. See, also, section 4759, Rev. Laws 1010; section 287, C. O. S. 1921, and cases cited.

A complete answer to defenses 4 and 6 is that they are not supported by any evidence.

This leaves for our consideration the defense No. 5 involving the extension of time, and defense No. 7, involving the question of contribution by plaintiff. These questions should be discussed, not only in the light of the pleadings as above outlined, but in the light of the evidence in the case, and for that purpose the full substance of the testimony will be given.

Janie B. Major, plaintiff, testified:

"I live in Chickasha and I am the plaintiff. Exhibit A is the original note sued on in this case. I do not know when I acquired this note, but it was transferred and indorsed by the owner to me on the back of the note at the time I acquired it. (Here the note is introduced in evidence without objection, a copy of which is set out above.) The payments indorsed on the note, together with the two payments made since the filing of this suit, one for $728.29 and one for $113.14, are the only sums that have ever been paid on it. My brother, R. J. Brown, purchased this note for me and conducted all negotiations with the Union Trust Company, the holder. He acted in my behalf. Q. You knew the note was secured by mortgage? A. I don't know that I did. I don't remember anything about the indorsement and don't know whether or not I was present when the note was bought. It was delivered to my brother, and he, I suppose, delivered it to me. I had no negotiations for the purchase of this note only through my brother. He told me to buy this note and I did and paid for it. I don't know that I ever looked at the note before. I paid something over $8,000 for the note, but do not remember the exact amount. My brother placed the credits on the note, but I authorized him to do so. I do not know what is embraced in the credit of $5,557.76. I do not know the source of the money, nor do I know the source of other credits. I do not know of any other credits that ought to be applied on the paper. My brother took care of that for me and I did not bother my mind with it. In a general way, I suppose, the note was secured by property, but I did not check up the matter."

Plaintiff rests.

Defendant offers the last will of L. D. Major. Objected to by plaintiff as irrelevant, incompetent and immaterial. Overruled and exceptions. Said will gives to Janie B. Major all of the property, real, personal, and mixed, of the testator in fee simple, absolute, and names her as executrix without bond. No description of property is set out therein. This instrument is dated January 30, 1913. Defendant offers in evidence the final decree of distribution filed in the matter of the estate of L. D. Major, deceased, in the county court of Grady county. The pertinent part of this decree finds that the executrix has on hand the property listed in the inventory and appraisement, except such as has died, been lost, or been consumed in the preservation of said estate. **The decree further finds that said estate is insolvent in that the debts proved and allowed against the estate are in excess of the assets thereof, and that the executrix with her own private and separate means, and by pledging her own personal credit, has paid the indebtedness of the estate** and all the property of the estate is distributed to and vested in Janie B. Major as the sole legatee of said will. This decree is dated the 16th day of January, 1923.

Earl Spring, the defendant, testified as follows:

"I live in Ryan, Okla., and am acquainted with the Ryan Cotton Oil Company, and A. A. Spring, and knew L. D. Major in his lifetime. I identify one of the signatures on plaintiff's exhibit 'A' as my signature. I was not interested in the Ryan Cotton Oil Company. I did not sign as principal. I was not taking over the note in any way. I was not buying any notes. I had no knowledge of the assignment and transfer of the note to Mrs. Major. I did not consent to it."

Cross-examination:

"Q. You were all on the other notes secured weren't you? A. Yes, sir; I guess so. I never did agree that this note should be junior and inferior to the other two notes."

A. A. Spring, for the defendant, testified as follows:

"I reside at Ryan, Okla. I can identify the signature of L. D. Major and Earl Spring on the note in question. Mr. Major was president of the Ryan Cotton Oil Company, and signed the name of the company to the note. I never knew of the indorsement on the note until it had changed hands, after it had become Mrs. Major's. I did not agree to same. I signed the note as surety. I thought the note was amply secured."

Cross-examination:

"Q. You were all signers of these other two notes? A. I guess so."

The attorneys for the respective parties stipulate and agree as a part of the testimony in the case that the other two notes

referred to in the evidence were paid by sale of the mortgaged property by the receivers of the Ryan Cotton Oil Company under order of this court.

The defendant rests, and thereupon the plaintiff rests.

At this time the plaintiff demurs to the defendant's evidence, and says that the same constitutes no defense. This demurrer was overruled and exceptions saved, and the defendant moved for judgment upon a similar ground, and that motion was likewise overruled and exceptions allowed.

The crucial and determinative points, therefore, before this court are: (1) Is the note sued on a negotiable instrument? From an examination of the instrument in the light of the definition of such an instrument furnished by section 7671, C. O. S. 1921, this question must be answered in the affirmative. (2) Does the peculiar indorsement shown on the back of the instrument defeat its negotiability in the hands of the present holder? The answer to this question must be in the negative. This, of course, depends upon the construction of section 7717, C. O. S. 1921, which provides:

"An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise."

And section 7706, C. O. S. 1921, which defines a restrictive indorsement. is as follows:

"An indorsement is restrictive. which either: First: Prohibits the further negotiation of the instrument; or second, constitutes the indorsee the agent of the indorser; or, third, vests the title in the indorsee in trust for or to the use of some other person. But the mere absence of words implying power to negotiate does not make an indorsement restrictive."

It is apparent from the definition that the peculiar indorsement under discussion does not fall within the provisions of this section referring to restrictive indorsement.

Section 7708, C. O. S. 1921, defining qualified indorsements and their effect, is as follows:

"Qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse,' or any words of similar import. **Such an indorsement does not impair** the negotiable character of the instrument."

It seems quite clear that the indorsement under discussion comes under the very express words of the section last named, and therefore that such indorsement did not affect the negotiability of the instrument. These sections last named have received numerous constructions and interpretations by our court, and have always been given substantial effect.

(3) Is the plaintiff a holder for value in due course? The answer to this question depends upon the construction of paragraph 7722, C. O. S. 1921, which defines a holder in due course as follows:

"A holder in due course is a person who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face;

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third. That he took it in good faith and for value;

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The instrument is, of course, regular upon its face, and the proof is undisputed that the plaintiff paid full value. Did the plaintiff take the instrument before it was overdue? The following sections are taken from the Compiled Oklahoma Statutes, 1921:

"7729. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove he, or some person under whom he claims, acquired the title as a holder in due course. * * *"

"7725. The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

There was not a word of testimony, either direct or inferential in this case, that there was present in the making or negotiating of this note any of the defects named in this section.

"7726. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

"7699. An accommodation party is one

who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

"7727. A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

There was no testimony in the case showing when the plaintiff bought this note, and in the absence of evidence the legal presumption that she was a purchaser in due course for value and before overdue must prevail.

We have given attention to the allegation in the petition that said "note and bond matured on the first day of April, 1921, and that upon said date the makers thereof were unable to pay the same, and said note was by the Union Trust Company transferred, sold, and indorsed to the plaintiffs herein," etc. Does that help the defendant? It shows merely, if anything, that the note was regularly transferred on the maturity date, but that would necessarily and logically mean a transfer before the instrument was overdue.

This identical question has been passed on many times, and we think the current of authority is practically unanimous that the maker or acceptor of a negotiable instrument has the whole day in which to make payment, and in nearly all, if not quite all, the courts, it is held that an action cannot be brought even after denial and refusal to pay, until the day following, and where grace is allowed, until the day following the last day of grace. 8 C. J. tit. Bills and Notes; Rauer v. Broder, 107 Cal. 282, 40 Pac. 430; Farmers Nat. Bank v. Salina Paper Mfg. Co., 58 Kan. 207, 48 Pac. 863; Crites v. Ins. Co., 91 Neb. 771, 137 N. W. 847; Joergenson v. Joergenson, 28 Wash, 477, 68 Pac. 913.

It should be observed also that the plaintiff pleaded the facts which entitled her to be regarded as a holder in due course, and that the defendant neither pleaded nor attempted to prove that the plaintiff did not purchase the note before the same was overdue.

We have given careful attention also to the defendant's claim for contribution and subrogation, and the court's holding thereon.

We shall brush aside the technical objections to this contention, which are not without force, to the effect that before any one can call for contribution he must have paid the debt (6 R. C. L. 1042, 1043), and deal with the question on its merits.

The defendant in this cause introduced the order of distribution in the L. D. Major estate, showing, among other things, that the estate was totally insolvent, in that the debts were largely in excess of the assets. The defendant, of course, was not conclusively bound by this statement, but it went in unqualified, unquestioned, and uncontradicted, and is the only proof in the case on this question. What, then, is the profit of discussing contribution when there is nothing out of which to contribute, or of the interesting question of subrogation, when there is nothing of substance upon which the right of subrogation might fasten?

"The share of an amount due by way of contribution by one of the persons liable to contribute, but who died wholly insolvent, should be borne ratably by the others liable to contribute." Matson v. Jarvis (Tex. Civ. App.) 133 S. W. 941.

The general rule is that in determining the proportion which each debtor should contribute, regard will be had only to solvent debtors. 13 C. J. 825, and cases cited.

If the court should hold that a devisee or legatee, who has upon the open market purchased a note upon which there appears, along with others, the name of the testator, is compelled to credit such note, whatever the amount of same may be, with that sum which the deceased ought to have contributed, then the corollary of the proposition must necessarily be true, that the sole heir, who, before the death of such intestate, bought a note upon which there appeared the name of such intestate as a maker, would be compelled by operation of the law to credit the obligation which he had purchased in good faith for full value, with such a sum as said intestate ought to have contributed to the payment of such note. In short, the law might thus cast upon the sole heir, and without his volition, an estate of practically no value, but because he had bought a note in the open market with the name of the intestate as maker thereon, he might be compelled to pay or lose a sum largely in excess of the estate. This is absurd on its face.

There was no effort made to show that the plaintiff purchased the note in question for the benefit of the estate, nor with estate funds. The personal representative of the estate was not made a party, and the court having found that plaintiff is a holder in

due course, we find ourselves unable to discover any law or any fact that would or should prevent the plaintiff from recovering on the note, or which should in any wise warrant the deduction from the amount of such recovery one-half thereof upon the theory that the plaintiff, who was not a party to said note, was liable for contribution, and it is therefore considered that there is error, and that this case should be remanded to the court below with instructions to enter judgment for the plaintiff for the full amount of the note, attorneys' fees, interests and costs, and it is so ordered.

TEEHEE, MONK, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 8 C. J. p. 52, §55. (2) 8 C. J. p. 366, §544; 3 R. C. L. p. 973; 1 R. C. L. Supp. p. 936; 4 R. C. L. Supp. p. 225; 6 R. C. L. Supp. p. 211. (3) 8 C. J. p. 370, §550; anno. 2 A. L. R. 218; 3 R. C. L. Supp. 971; 1 R. C. L. Supp. p. 935. (4) 8 C. J. p. 402, §596; p. 465 §684; p. 477, §694; p. 718, §1005-1006; 3 R. C. L. p. 1031; 1 R. C. L. Supp. p. 950; 4 R. C. L. Supp. p. 230; 5 R. C. L. Supp. p. 215; 6 R. C. L. Supp. p. 214. (5) 8 C. J. p. 943, §1233; p. 950, §1238; p. 1084, §1406; 13 C. J. p. 825, §10.